931 A.2d 1098

**Lorinda Ann BROADWATER**

v.

**STATE of Maryland.**

**No. 123, Sept. Term, 2006.**

Court of Appeals of Maryland.

Sept. 13, 2007.

Amy E. Brennan, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, MD, for Petitioner.

Kathryn Grill Graeff, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of MD, on brief), Baltimore, MD, for Respondent.

BELL, C.J., RAKER, CATHELL *, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER, (Retired, specially assigned), JJ.

HARRELL, Judge.

We issued a writ of certiorari in this case to consider two questions: (1) whether the Circuit Court for Frederick County was correct in finding that, as a matter of law, a defendant in a criminal case may be held to have waived validly by inaction, pursuant to Maryland Rule 4–215(a) and (d), his or her right to be represented by counsel where the required preliminary litany of advisements under (a) was provided to the defendant by various judges in a piecemeal and cumulative fashion over the course of multiple appearances before the District Court and Circuit Court because the case was initiated in the District Court pursuant to that court's exclusive original juris-diction and the defendant removed the case to the Circuit Court by praying a jury trial; and (2) whether the Circuit Court abused its discretion by finding that Lorinda Ann Broadwater, defendant below and Petitioner here, waived her right to counsel, despite her proffered excuses for failing to engage counsel? The Court of Special Appeals found no

---

* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

reversible error with the piecemeal approach to rendition of the litany of Rule 4–215(a) advisements and concluded that the Circuit Court did not abuse its discretion in finding that Broadwater waived her right to counsel by inaction. For the reasons set forth below, we affirm.

## I.

### A.

#### *Legal Context*

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . and to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Through the Fourteenth Amendment,[1] the duty to provide all criminal defendants with counsel applies to individual states because such provision is "fundamental and essential to a fair trial." *Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963). Similarly, Article 21 of the Maryland Declaration of Rights states "that in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; [and] to be allowed counsel." MD. DECL. OF RIGHTS, art. 21. These constitutional provisions "guarantee a right to counsel, including appointed counsel for an indigent, in a criminal case involving incarceration." *Parren v. State,* 309 Md. 260, 262, 523 A.2d 597, 598 (1987) (quoting *Rutherford v. Rutherford,* 296 Md. 347, 357, 464 A.2d 228, 234 (1983)).

---

1. Specifically, the Fourteenth Amendment, in pertinent part, provides: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. CONST. amend. XIV.

■ As part of the implementation and protection of this fundamental right to counsel,[2] we adopted Maryland Rule 4–215,[3] which explicates the method by which the right to counsel may be waived by those defendants wishing to represent themselves, the modalities by which a trial judge may find that a criminal defendant waived implicitly his or her right to counsel, either by failure or refusal to obtain counsel, and the necessary litany of advisements that must be given to all criminal defendants before any finding of express or implied waiver of the right to be represented by counsel may be valid.[4] The Rule "provides an orderly procedure to insure

---

2. *See Parren v. State*, 309 Md. 260, 263, 523 A.2d 597, 598 (1987) (explaining that "the right to counsel is a fundamental constitutional right, basic to our adversary system of criminal justice")

3. The Maryland Rules of Procedure have the force of law. MD. CONST., art. IV, § 18.

4. Maryland Rule 4–215, in pertinent part, provides:
   (a) First Appearance in Court Without Counsel. At the defendant's first appearance in court without counsel or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:
   (1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.
   (2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.
   (3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.
   (4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.
   (5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.
   * * *
   (d) Waiver by Inaction—Circuit Court. If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appear-

that each criminal defendant appearing before the court be represented by counsel, or, if he is not, that he be advised of his Sixth Amendment constitutional right to the assistance of counsel, as well as his correlative constitutional right to self-representation." *Wright v. State*, 48 Md.App. 185, 191, 425 A.2d 1385, 1388, *cert. denied*, 290 Md. 724 (1981). Any decision to waive counsel (or to relinquish the right to counsel through inaction) and represent oneself must be accompanied by a waiver inquiry designed "to ensure that [the decision] is 'made with eyes open' " and that the defendant has undertaken waiver in a "knowing and intelligent" fashion. *State v. Brown*, 342 Md. 404, 414, 676 A.2d 513, 518 (1996).

As a threshold requirement to finding a valid waiver of counsel by a defendant, a trial judge first must find that all requisite Rule 4–215(a) advisements have been rendered previously. Advisements (a)(1) through (3) are required to be given to a defendant upon his or her first appearance in court without counsel, or when a defendant appears before the District Court, demands a jury trial, and the record does not reflect prior satisfaction of the required advisements. Advisements (a)(4) and (5), on the other hand, are contingent in that they are required to be given only when a defendant expresses a desire to waive counsel or when trial is to be conducted on a subsequent date, respectively. Md. Rule 4–215(a).

Subsections (b) through (e) of the Rule provide four separate modalities by which the assistance of counsel may be waived. The right to counsel may be waived expressly, by inaction in the District Court, by inaction in the Circuit Court, or by discharge of counsel. If, upon the occurrence of one of the aforementioned events, the record reflects that subsection (a) has been fully satisfied, the trial court then must follow the

---

ance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial.

directives of the appropriate waiver modality before finding that a defendant waived his or her right to counsel. A court may not find an effective waiver pursuant to (b)-(e) unless the record demonstrates compliance with subsection (a). *McCracken v. State*, 150 Md.App. 330, 348, 820 A.2d 593, 604 (2003).

Because the right to counsel is a "basic, fundamental and substantive right," the requirements of Maryland Rule 4–215 are "mandatory and must be complied with, irrespective of the gravity of the crime charged, the type of plea entered, or the lack of an affirmative showing of prejudice to the accused." *Taylor v. State*, 20 Md.App. 404, 409, 411, 316 A.2d 296, 299, 300 (1974) (overturning a conviction where the defendant was not informed of the allowable punishments and the usefulness of the assistance of counsel in determining available defenses before he w as found to have waived his right to counsel); *see also State v. Bryan*, 284 Md. 152, 155, 395 A.2d 475, 477 (1978) (explaining that the Maryland Rules "are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice' "). Strict, not substantial, compliance with the advisement and inquiry terms of the Rule is required in order to support a valid waiver. *Moten v. State*, 339 Md. 407, 411, 663 A.2d 593, 596 (1995) (holding that strict compliance with Rule 4–215 is mandatory and that a trial judge's failure to inform a defendant of the allowable penalties for the offenses charged in the indictment cannot constitute harmless error); *Webb v. State*, 144 Md.App. 729, 741, 742, 800 A.2d 42, 49 (2002) (finding a failure to comply with Rule 4–215 where the nature of the charges were explained to the defendant by the State's Attorney and not the trial judge); *Evans v. State*, 84 Md.App. 573, 580, 581 A.2d 435, 438 (1990). A failure to comply with the Rule constitutes reversible error. *Moten*, 339 Md. at 411, 663 A.2d at 596.

### B.

#### The Facts of the Present Case

The facts material to the issues raised in Petitioner's petition for certiorari are not in dispute. On 25 June 2004, at

approximately 2:00 a.m., Montgomery County Police Officer James Geary, a resident of Frederick County, was driving home, northbound on Route 15 in Frederick County. Officer Geary observed a vehicle, with its headlights unlit, traveling directly towards him in his lane of traffic. He swerved in order to avoid a head-on collision. He subsequently called for assistance from Frederick County law enforcement personnel, made a U-turn, and followed the vehicle. As he pursued the vehicle, Officer Geary observed the car narrowly miss other vehicles in oncoming traffic and saw its headlights flickering on and off. Eventually, the car pulled into the parking lot of a townhouse development. Geary approached the vehicle and identified Lorinda Ann Broadwater as the driver. She admitted to him to drinking at a bar that night.

Within minutes, Frederick County Deputy Sheriff Chris Schreiner arrived on the scene. He observed that Broadwater's eyes were watery and bloodshot and that an odor of alcohol emanated from her vehicle. He attempted to administer standard field sobriety tests, but Broadwater, who had difficulty keeping her balance, could not perform the tests as instructed. A preliminary breath test revealed that she had a breath alcohol content of .19.[5] As a result, Deputy Sheriff Schreiner placed Broadwater under arrest.

Later that same day, Broadwater was charged in the District Court of Maryland, sitting in Frederick County,[6] with

---

**5.** Under Maryland law, an individual may not drive or attempt to drive any vehicle while under the influence of alcohol or while impaired by alcohol. Maryland Code (1974, 2006 Repl. Vol.), Transportation Article, § 21–902(a)–(b). An individual is considered under the influence of alcohol per se when that individual has an alcohol concentration at the time of breathalyzer or blood testing of 0.08 or more. Maryland Code (1974, 2006 Repl. Vol.), Transportation Article, § 11–714.1.

**6.** Maryland Code (1974, 2006 Repl. Vol.), Courts & Judicial Proceedings Article, § 4–301(a) provides, in pertinent part, that "the District Court has exclusive original jurisdiction in a criminal case in which a person at least 16 years old or a corporation is charged with violation of the vehicle laws ... or regulations adopted pursuant to the vehicle laws." Broadwater was over the age of sixteen at the time of her arrest and charging.

negligent driving, failing to illuminate headlights, driving under the influence of alcohol, and driving while impaired by alcohol. She was taken promptly before a District Court Commissioner and received copies of the charging document and a Notice of Advice of Right to Counsel.

Approaching three months later, on 21 September 2004, Broadwater appeared, without counsel, for trial before the Honorable Janice Ambrose of the District Court. At this initial appearance, the following colloquy occurred:

THE COURT: Ms. Broadwater, you're charged with negligent driving, failure to display lighted lamps. Those are payable offenses. Each with a maximum penalty of a Five Hundred Dollar fine. One count of driving or attempting to drive a vehicle (inaudible) alcohol and one count of driving or attempting to drive while impaired by alcohol. The alcohol offenses: one is a Five Hundred Dollar fine and/or sixty days and the other one is a Thousand Dollar fine and/or one year in jail. Did you receive copies of those charges?

BROADWATER: I received copies of it, yes. I did need more time.

THE COURT: And you're here without a lawyer, Ms. Broadwater. Do you wish to perform without one?

BROADWATER: Absolutely not. I do need more time because it's not the lawyer fee but I do—I'm trying to get a polygraph done to bring in as evidence and those things take time and I've only had three months.

THE COURT: What's the State's position?

STATE'S ATTORNEY: The State has two witnesses and we're ready to proceed today.

THE COURT: Well, Ms. Broadwater, what have you been doing for the last three months?

BROADWATER: Uh, let's see, so far I've lost my house. I'm living out of my car. Oh, here—

THE COURT: Ms. Broadwater, when you were charged back on June 23rd,[7] you were advised by the Court Commis-

---

7. While the relevant transcript reflects that the date of Broadwater's arrest and arraignment was 23 June 2004, in actuality, both events occurred on 25 June 2004.

sioner about your right to have a lawyer. Do you recall that?

BROADWATER: Yes. And I did contact one and I picked one to hire. But when my—

THE COURT: I'm not continuing your case, ma'am.

BROADWATER: Okay.

THE COURT: You have the absolute right to have a jury trial if you want one.

BROADWATER: Yes, I want a jury trial.

THE COURT: I can't keep you here in District Court if you want to have a jury trial.

BROADWATER: Okay.

THE COURT: Come see the Clerk. Your case is going to be sent to the Circuit Court.

BROADWATER: Thank you.

Thus, at her sole appearance before a District Court judge, Broadwater received those portions of the litany required by Maryland Rule 4–215(a)(1) and (3).

As a result of her prayer for a jury trial, Broadwater appeared on 8 October 2004 at an initial appearance in the Circuit Court for Frederick County before the Honorable John H. Tisdale, again without counsel. In addition to setting a trial date of 8 November 2004, Judge Tisdale described the right to be represented by counsel and the importance of having a lawyer, and also advised Broadwater of the possibility that a further appearance without counsel might result in the court finding that she waived her right to counsel by inaction:

THE COURT: Okay. You have a trial date set for the 8th of November. Now, have you made any efforts to retain an attorney?

BROADWATER: I wanted to make sure it would go to a jury trial.

THE COURT: That's fine, but have you made any efforts to retain an attorney?

BROADWATER: I did go one time to the public defender after the circuit court date that I had. I'm sorry, I have fibromyalgia, it's a little hard sometimes. I did go there. They said in order for them to help me, they needed a paper saying somebody was supporting me, and basically for months I've been going from place to place, different friends' houses. I haven't been home in about three months, so if they mailed anything, I wouldn't have gotten it.

THE COURT: Well, Ms. Broadwater, let's just get down to brass tacks, okay? I'm not your friend, I'm not your enemy either, all right? There are just some facts of life that exist. Now, you have a trial date of the 8th of November at 9 a.m. Now, I'm going to tell you the whole nine yards, but let me just be very clear. If you come to court on that date without an attorney, you probably won't be granted a continuance to retain one, okay? Now, I—it's a lot easier for me to sit up here and say those things than it is to make it happen, but that's beside the point, okay? The Court's a big ole machine and it's going to continue to run. It's your responsibility. Understand that if you're found guilty, you could be sentenced to up to one year at the local detention center and a fine of up to $1,000, so you have a right to an attorney. If you can't afford to retain an attorney who is in private practice, you may be eligible for representation with the Office of the Public Defender. Now, they need at least four weeks, which is what you've got left, to process the whole thing, so I would do whatever it takes today to get started on that process. Certainly, you don't have to go there. You may be able to retain an attorney who is in private practice—

BROADWATER: Not by this week.

THE COURT: An attorney can assist you by evaluating the charges and the facts of the case and advising you how to proceed in connected court proceedings on your behalf. As I told you, if you come to court on the 8th of November without an attorney, you likely won't be granted a continuance to retain one. Now, I know you've heard this same

advice on a number of occasions, and a judge is going to look at this file and say, well, we've told her and told her, okay?

BROADWATER: I was afraid he'd try and plead it out.

THE COURT: What's that?

BROADWATER: I was afraid if I got one before this, he'd try to plead it without a jury trial.

THE COURT: Well, I'll leave that to you, Ms. Broadwater.

On 8 November 2004, Broadwater, without counsel, appeared before the Honorable Theresa M. Adams for trial. Due to a previously-scheduled trial to which Judge Adams was committed and a shortage of other judges available on that day to try Broadwater's case, Broadwater's trial was continued to 24 January 2005. Before concluding the proceeding on 8 November, Judge Adams stressed to Broadwater the "right to counsel" and the "potential for waiver by inaction" portions of the required Rule 4–215(a) litany relative to the new trial date:

THE COURT: Ms. Broadwater, you came before the Court on October 8, correct, and you were advised of your right to be represented by a lawyer and you were advised of your right for a trial, correct?

BROADWATER: My first court date I asked for a continuance and she told me it was denied.

THE COURT: And that was in district court, ma'am?

BROADWATER: Yes.

THE COURT: And you asked for a continuance in district court and that was denied, and then you prayed a jury trial, correct?

BROADWATER: Yes.

THE COURT: And then you came here for what's called, we call it a rule hearing, an arraignment, and initial appearance. You came here on October 8 and at that time the Court advised you that you had the right to have a trial and advised you that you had the right to have a lawyer?

BROADWATER: Yes.

THE COURT: Now, what is it that you'd like to do today?

BROADWATER: I still would like to represent myself.

\* \* \*

THE COURT: I don't see, quite frankly, that I'm going to have enough time this afternoon to try two jury cases in an afternoon. Now, so having said that ... [y]ou have what's called 180 days, this case has to be tried in 180 days. That 180–day date is April 6, 2005, so I'm going to continue your case, but that will give you a chance to think about whether you want a lawyer. Do you understand?

BROADWATER: Thank you.

THE COURT: Now, I'm going to tell you again what the judge already told you in October. You have the right to hire a lawyer of your own choosing. You have the right to represent yourself, you can do that, if you want, but a lawyer can be helpful to you and could be helpful to you not only in the trial, but also in presenting information to the Court in mitigation, okay, to help you with, if you were found guilty, what the sentencing may be, to help you with any issues a lawyer might think are appropriate, so that—a lawyer could help you. If you do not, cannot afford a lawyer, you can go to the Office of the Public Defender. If you qualify for their services, they will provide a lawyer for you. If you don't qualify for their services, they won't and you'll have to decide if you want to hire one or make other arrangements with a lawyer. So I'm telling you that one more time so that when this case comes back here, the record is going to reflect you were advised of your right to a lawyer once again, and if you come back without a lawyer, the judge could find that you have waived your right to be represented by counsel, by a lawyer. Do you understand that, Ms. Broadwater?

BROADWATER: Yes, ma'am.

On 24 January 2005, when Broadwater appeared for trial before the Honorable G. Edward Dwyer, Jr., she again was

without counsel. Judge Dwyer ordered a three-week post-ponement and set a new trial date for 14 February 2005.[8]

On 14 February 2005, Broadwater appeared before Judge Tisdale for trial. After an inquiry into the reasons why Broadwater was present in Circuit Court for the fourth time without counsel, Judge Tisdale found that she had waived, by inaction, her right to counsel under Maryland Rule 4–215(d) and proceeded to trial. Broadwater represented herself. The pre-trial waiver colloquy went as follows:

[STATE'S ATTORNEY]: Your Honor, it's my understanding that Ms. Broadwater is going to be entering a not guilty plea today, and the State is ready to proceed with trial.

THE COURT: All right, and, Ms. Broadwater, you were advised of your right to an attorney. I see you're here without an attorney.

BROADWATER: Yes.

THE COURT: Have you made efforts to retain an attorney?

BROADWATER: I did once I got discovery from the State, and what wasn't in there was the original signed statement of probable cause, and the story that the—the paper that they gave me is significantly different than my signed statement of probable cause, so I tried to figure out how I was going to work that until February 1, where I called the Public Defender and they said I would have had to be in there the day before, so I'm defending myself. I have questions (indiscernible).

THE COURT: All right. Well, when you were before Judge Adams back in November, she advised you then of your right to an attorney?

BROADWATER: Yes. I'm still okay.

THE COURT: So you had from November 8. Actually, you had from the time you were in district court—

BROADWATER: Um-hmm.

---

8. The Court granted Broadwater's request for a postponement because she claimed to be awaiting certain discovery responses from the State.

**190**

THE COURT: But you certainly had that time. I find under the circumstances that you've waived your right to an attorney.

BROADWATER: Okay. Your Honor, actually what I would like the State to do is provide the signed statement of probable cause. The significance [sic] difference that cause the problem was that in the original statement, it said that it was a Prince George's County police officer with no name that was listed, so I made arrangements for that, and in the statement they gave me, it's a Montgomery County police officer. When I realized that—and, plus, there were other significant differences between the two. That's when I realized I was in trouble and tried to get an attorney.

THE COURT: What—what's the—what difference does it make whether—in that regard?

BROADWATER: Because—I guess I'll have to go through it. The person that confronted me at the time of the accident saying that I had—not accident, but incident—the person confronting me at the time is a different description than who's here right now.

THE COURT: So you've never seen the officer who's here today?

BROADWATER: Not the officer, the—I'm assuming that is the Montgomery County police officer that's sitting next to him, the State's other witness?

THE COURT: Well, these events occurred on the 25th of June of last year.

BROADWATER: Um-hmm.

THE COURT: Have you made any efforts to contact the officers or prepare any witnesses for your trial?

BROADWATER: The two witnesses I had were there to testify that the person that confronted me saying I saw you driving, dah, dah, dah, matched the description of a person that had been sitting out in my parking lot in October of that year, the year before. All of a sudden, the officers changed.

THE COURT: Well, that's why we have trials.

BROADWATER: Um-hmm. I'm still okay, but what I couldn't work in, it was as if nobody—now it's a mythological person. There's nobody there that can—there were five police officers there, but there's nobody to say that this officer was there, so my two witnesses, what good is it?

THE COURT: Okay. So, are you prepared to proceed?

BROADWATER: Yes.

THE COURT: All right, and I understand you wish to have a trial by jury?

BROADWATER: Yes.

THE COURT: All right, are we ready for the—so, we'll call the jury.

At the conclusion of trial, the jury convicted Broadwater on all counts. After merging the lesser included offense of driving while impaired into the conviction for driving while under the influence, Judge Tisdale sentenced Broadwater to six months in jail for the driving under the influence of alcohol conviction, suspending all but thirty days. The Court also fined her $750 for driving while under the influence of alcohol and $100 each for the convictions of negligent driving and failure to illuminate headlights.

Represented by the Office of the State Public Defender, Broadwater appealed to the Court of Special Appeals. The Court of Special Appeals affirmed, in a reported opinion, the judgments of the Circuit Court for Frederick County, concluding that Maryland precedent and the specific language of Rule 4–215(a) and (d) suggested that the piecemeal advisement situation appearing on this record satisfied the requirements of the Rule. *Broadwater v. State,* 171 Md.App. 297, 317–20, 909 A.2d 1112, 1123–25 (2006). The Court reasoned that the Rule does not require a unified set of advisements at a single hearing at which one judge provides each and every of the required Rule 4–215(a) advisements. *Broadwater,* 171 Md. App. at 317–20, 909 A.2d at 1123–25. Rather, the "combined salvo of inquiry and information" provided by Judges Ambrose, Tisdale, and Adams, on 21 September 2004, 8 October 2004, and 8 November 2004, respectively, satisfied the advisements due Broadwater. *Broadwater,* 171 Md.App. at 322, 909

A.2d at 1126. Because Broadwater had been informed on numerous occasions of her right to counsel, as well as the importance of retaining an attorney for her defense, the intermediate appellate court opined that Judge Tisdale was correct in finding that Broadwater waived, by inaction, her right to counsel. *Broadwater,* 171 Md.App. at 327–28, 909 A.2d at 1129–30.

We granted Broadwater's petition for writ of certiorari, 396 Md. 524, 914 A.2d 768 (2007),[9] to consider two questions: (1) whether the finding of waiver by inaction by the Circuit Court, pursuant to Maryland Rule 4–215(a) and (d), of Broadwater's right to be represented by counsel was valid where the required preliminary litany of advisements was provided to her on a piecemeal basis by a combination of District and Circuit Court judges because the case originated in the District Court under its exclusive original jurisdiction over the charges and the defendant prayed a jury trial, thereby transferring the case for trial to the Circuit Court; and (2) whether the Circuit Court abused its discretion in rejecting her excuses and finding instead that Broadwater waived her right to be represented by an attorney through her repeated failure to appear for trial with counsel, and requiring that she represent herself at trial.

## II.

### Discussion

### A.

#### Petitioner's Court Appearances as they Pertain to Md. Rule 4–215(a)

Broadwater concedes that, collectively during the progress of this case, she received each of the required advisements in

---

9. The publication in the official state reporter of our action on Broadwater's petition for writ of certiorari contains an error. It indicates that we denied certiorari in this case. This error apparently misled at least one panel of the Court of Special Appeals in a later case which referred in its opinion to a denial of certiorari in *Broadwater v. State. See Jones v. State,* 175 Md.App. 58, 79, 924 A.2d 336, 348 (2007).

Md. Rule 4-215(a), namely (1), (2), (3), and (5).[10] In the District Court, Broadwater was advised of her rights under (a)(1) and (3). Specifically, Judge Ambrose confirmed that Broadwater received the charging documents and advised her explicitly of the nature of the charges and the potential penalties attendant to those charges. The District Court, however, did not advise her orally and on the record, as provided by 4-215(a)(2), of the right to and importance of counsel, or (a)(5), of the potential for waiver by inaction upon a repeated appearance in court without counsel. Thus, standing alone, the advisements given by the District Court would not have satisfied fully the requirements of Rule 4-215(a).

After demanding a trial by jury, Broadwater appeared without counsel in the Circuit Court on 8 October 2005. Judge Tisdale, at this point, complied with the missing requirements of Rule 4-215(a) and completed the litany of advisements. At this hearing, he provided Broadwater with the advisements under (a)(2) and (a)(5), but did not repeat the subsection (a)(1) advisement confirming that Broadwater had received a copy of the charging documents. Regarding (a)(3), Judge Tisdale repeated only the flagship charge advisement, namely, driving under the influence of alcohol, and that the potential penalty for a conviction thereof could be up to a $1000 fine and up to one year of imprisonment.[11] At this point in the case, Broadwater had received (a)(1) and (3) advisements from the District Court and advisements of (a)(2) and

---

**10.** Advisement (4) was not required to be given to Broadwater because the waiver of counsel in this case was found under 4-215(d), waiver by inaction, rather than 4-215(b), express waiver of counsel.

**11.** The Court of Special Appeals found that advising Broadwater of the flagship charge and the maximum penalty for conviction of that charge satisfied fully the requirements of (a)(3). Because advisement under (a)(3) already had been given in full in the District Court by Judge Ambrose, who delineated each charge and attendant possible penalties, we need not decide whether the Circuit Court simply advising Broadwater of the flagship charge and penalty, standing alone, would have satisfied Rule 4-215(a)(3) had the 8 October 2005 advisement been the only occasion where (a)(3) was addressed.

(5) from the Circuit Court. Maryland Rule 4–215(a)(4) remained inapplicable.

On 8 November 2005, before postponing the trial date, Judge Adams of the Circuit Court repeated the advisements under Maryland Rule 4–215(a)(2) and (5). At Broadwater's next appearance, before Judge Dwyer, where she requested a postponement because she had not received parts of the State's discovery responses, no further relevant advisements were given. Finally, on 14 February 2006, Judge Tisdale conducted the subsection (d) waiver inquiry and determined from that that Broadwater waived by inaction her right to be represented by counsel by failing to retain counsel. Thus, prior to Judge Tisdale's finding of waiver by inaction, Broadwater had received each of the relevant subsection (a) advisements (some on multiple occasions) due under the Rule.

## B.

### Piecemeal and Cumulative Satisfaction of Rule 4–215(a) Advisements

Despite conceding, as she must, that all of the advisements and inquiries mandated by subsection (a) occurred at one time or another before waiver was found, Broadwater finds fault with the method of advisement because she maintains that Rule 4–215(a) contemplates an omnibus hearing at which all of the required advisements must be given to a defendant at one time. She contends our holdings in certain prior cases support this interpretation. She alleges that, because she was advised of her right to counsel and the potential for waiver of that right through inaction in a piecemeal fashion, over at least two court appearances before the District and Circuit Courts, Judge Tisdale was not at liberty to find waiver by inaction pursuant to Rule 4–215(d).

We have addressed, albeit under different circumstances, whether a piecemeal approach to satisfying the advisement requirements of Rule 4–215(a) may survive appellate scrutiny. In *Gregg v. State*, 377 Md. 515, 833 A.2d 1040 (2003), we considered whether Maryland Rule 4–215(a) could be satisfied on a piecemeal basis by two different judges of a Circuit

Court, over the course of two separate hearings.[12] *Gregg*, 377 Md. at 528, 833 A.2d at 1046–47. The defendant in that case was charged in the District Court [13] with 2nd degree assault, but prayed a jury trial. *Gregg*, 377 Md. at 523, 833 A.2d at 1044–45. At his initial Circuit Court appearance, Gregg received fully the advisements due to him under Rule 4–215(a)(1) (confirmation of receipt of the charging documents); (a)(2) (the right to and importance of assistance of counsel); and (a)(4) (waiver inquiry where the defendant expresses a desire to waive counsel). *Gregg*, 377 Md. at 550–51, 833 A.2d at 1060–61. Regarding 4–215(a)(3), the judge explained to Gregg the potential penalty he faced if convicted, but failed at that point to inform him of the nature of the charges against him.[14] *Id.* The deficiency was cured at his second Circuit Court hearing where another judge supplied the missing (a)(3) portion of the litany by asking Gregg if he understood that he was charged with second degree assault. *Gregg*, 377 Md. at 552, 833 A.2d at 1062. Gregg responded that he did. *Id.* We held that, because Gregg received from the combined efforts of the two Circuit Court judges each and every on-the-record advisement required by Rule 4–215(a) in his situation, his waiver of counsel was effective and he was not entitled to a new trial. *Gregg*, 377 Md. at 554, 833 A.2d at 1063. As it was not presented in Gregg's case, we left open the question of wheth-

---

12. While *Gregg* involved an express waiver under sub-section (b), the same litany of advisements under Rule 4–215(a) was required as a prerequisite to a finding of a knowing and voluntary waiver.

13. Gregg appeared in the District Court at a competency hearing where the judge confirmed that the defendant understood the charges against him, the potential penalty associated with that charge, and the importance of having counsel to assist in his defense. *Gregg v. State*, 377 Md. 515, 519–20, 833 A.2d 1040,1042–43 (2003). Because Gregg later received all of the Rule 4–215(a) advisements in the Circuit Court, whether he also received the advisements at the pre-trial competency hearing in the District Court was not material to our analysis.

14. Because Gregg was found effectively to have waived his right to counsel on the same day that he was tried, the need to fulfill the (a)(5) advisement was not applicable. *Gregg*, 377 Md. at 554, 833 A.2d at 1063.

er a piecemeal combination of advisements by District and Circuit Court judges over multiple appearances might satisfy Rule 4–215. *Id.*

The Court of Special Appeals's reasoning in *McCracken*, 150 Md.App. 330, 820 A.2d 593 (2003), is persuasive on the issue of the acceptance of District Court advisements when considering whether a waiver found later in the Circuit Court, after the defendant requests a jury trial, may be valid. In that case, McCracken originally appeared in the District Court, without counsel, and prayed a jury trial. *McCracken*, 150 Md.App. at 348, 820 A.2d at 604. The record showed that, at his appearance in the District Court, McCracken received a copy of the charging document, was informed of his right to counsel and of the importance of the assistance of counsel, was advised of the nature of the charges and the allowable and mandatory penalties, was advised that his next appearance without counsel could be considered a waiver, and was referred to the Public Defender's office. *McCracken*, 150 Md. App. at 348–49, 820 A.2d at 604. After discharging the Public Defender assigned to represent him, McCracken appeared without counsel in the Circuit Court and requested appointment of an attorney in private practice, rather than another Public Defender. 150 Md.App. at 350, 820 A.2d at 605. The court found that he effectively waived his right to counsel, and proceeded to trial with McCracken representing himself. *Id.*

The Court of Special Appeals, in affirming the finding of waiver by the Circuit Court, held that, when a defendant appears in District Court without counsel, and prays a jury trial, advisements given by the District Court may be credited towards satisfaction of the requirements of Rule 4–215(a) when the Circuit Court considers whether waiver occurred. 150 Md.App. at 355, 820 A.2d at 608 (relying on *Moore v. State*, 331 Md. 179, 184, 626 A.2d 968, 970 (1993) and *Felder v. State*, 106 Md.App. 642, 648, 666 A.2d 872, 874–75 (1995), *cert. denied*, 341 Md. 648, 672 A.2d 622 (1996)); *see also Smith v. State*, 88 Md.App. 32, 43, 591 A.2d 902, 907 (1991) (explaining that "[t]he [1991] amendments also permit a circuit court judge to rely on the advice of the right to counsel previously

given to a defendant by a District Court judge when the defendant requests a jury trial"). Thus, the intermediate appellate court found that the District Court advisements "carried over" to the Circuit Court because McCracken had appeared in the District Court without counsel, the District Court at the time had exclusive original subject matter jurisdiction over the crimes with which he was charged, and McCracken prayed a jury trial. *McCracken,* 150 Md.App. at 355–56, 820 A.2d at 608.

*McCracken* is consistent with our prior cases interpreting Rule 4–215(a) in which this Court repeatedly held that advisements provided to a defendant in the District Court may be relied on later by the Circuit Court in the same case to find waiver, by inaction, of the right to counsel, where the defendant appeared in District Court, pursuant to that court's exclusive original jurisdiction, and prayed a jury trial. In *Moore,* we noted specifically that, when a case begins in the District Court and is transferred to the Circuit Court by way of jury trial demand, "by virtue of a 1991 amendment [to the Rule], the circuit court does not have to comply [anew] with [4–215(a)] so long as the record reflects that a District Court judge has already done so."[15] *Moore,* 331 Md. at 184, 626 A.2d at 970.

Likewise, we have emphasized that the language of Maryland Rule 4–215(d) provides expressly that advisements administered by the District Court may be relied on in this situation in the Circuit Court: "If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or *in an appearance in the District Court in a case in which the defendant demanded a jury trial,* the court shall permit the defendant to explain the appearance without counsel." Md. Rule 4–215(d); *see Rich-*

---

**15.** In *Moore,* whether a Circuit Court may rely on 4–215(a) advisements provided to the defendant by the District Court, after he prayed a jury trial, was conceded by Moore. *Moore v. State,* 331 Md. 179, 184, 626 A.2d 968, 970 (1993).

*ardson v. State,* 381 Md. 348, 364–65, 849 A.2d 487, 497 (2004). If the trial court finds the reason or reasons unmeritorious, it may determine that the defendant waived counsel by inaction. *Richardson,* 381 Md. at 364–65, 849 A.2d at 497.

Broadwater submits that her case is controlled by our holding in *Johnson v. State,* 355 Md. 420, 735 A.2d 1003 (1999), where we considered whether a circuit court with exclusive original jurisdiction over the subject matter may determine that a defendant waived the right to counsel based on "information" provided to the defendant at his or her earlier bail review hearing before the District Court. *Johnson,* 355 Md. at 424, 735 A.2d at 1005. In *Johnson,* the defendant was charged with first degree burglary and theft, charges committed to the exclusive original jurisdiction of the Circuit Court. *Johnson,* 355 Md. at 428, 735 A.2d at 1008. Johnson first appeared, without counsel, in the District Court solely for a bail review hearing. *Id.* He was provided there with documents that recited his right to counsel.[16] *Id.* When Johnson appeared thereafter in the Circuit Court, at none of his five appearances was he given the "section (a) litany" by any of the judges presiding. *Johnson,* 355 Md. at 454, 735 A.2d at 1021. At his trial, the judge found that, while the documents provided to Johnson at the District Court bail review hearing did not qualify as a "prior circuit court appearance [or] ... a prior appearance before the District Court without counsel accompanied by a jury trial demand," the requirements of Rule 4–215(a) substantially had been fulfilled. *Id.* As a result, the trial judge found that Johnson waived h is right to counsel. *Id.* When the case reached us, we concluded that, because the case was not transferred to the Circuit Court by way of a jury trial demand, an advisement given by the District Court, as opposed to one given in the Circuit Court, was not sufficient to

---

**16.** Specifically, in the District Court, Johnson was provided with a "Notice of Advice of Right to Counsel" and the "Initial Appearance Report" forms, which Johnson and the District Court Commissioner each signed, reflecting that the Commissioner informed Johnson of each of the charged offenses and the allowable penalties, and a "Bail Review Docket" form signed by a District Court judge. *Johnson v. State,* 355 Md. 420, 454–55, 735 A.2d 1003, 1021–22 (1999).

satisfy strict compliance with Rule 4–215(a). *Johnson,* 355 Md. at 426, 735 A.2d at 1006. Specifically, we held that, to avoid confusion on the part of an accused and to protect the fundamental right to counsel, the 4–215(a) advisements must be given by the correct court and not on a piecemeal basis. *Johnson,* 355 Md. at 461, 735 A.2d at 1025. Our holding rested on the foundational premise that Johnson's offenses were within the exclusive original jurisdiction of the Circuit Court and that, as a result, the preliminary matter of the bail review hearing in the District Court was not a relevant point from which to determine whether the required 4–215(a) advisements had been given. *Johnson,* 355 Md. at 453, 735 A.2d at 1021.

*Johnson* is easily distinguishable from the instant case. First, and most important, the charges in *Johnson* brought the defendant within the exclusive original jurisdiction of the Circuit Court. The District Court's sole role in that case was to conduct a bail review hearing. "[B]ecause Johnson did not appear in District Court without counsel and demand a jury trial, he was required to receive his subsection (a) advisements from a circuit court judge." *Johnson,* 355 Md. at 457, 735 A.2d at 1023. This is not the case with regard to the charges against Broadwater, who appeared initially in District Court, pursuant to that court's exclusive original jurisdiction, and prayed a jury trial, resulting in a transfer to the Circuit Court. *Johnson,* thus, governs only situations where the Circuit Court possesses exclusive original jurisdiction.

Further, in *Johnson,* the advisements in the District Court, if considered, nonetheless were deficient by virtue of the fact that the record showed that the District Court neither delivered orally to Johnson anything approaching the content of all of the advisements nor determined whether he understood his rights. Moreover, the litany of advisements, to the extent given, were provided to Johnson by a District Court Commissioner, not a judge. *Johnson,* 355 Md. at 455, 735 A.2d at 1022. These distinctions reveal that our holding rested, not on the notion that Rule 4–215(a) may not be satisfied cumulatively by seriatim advisements delivered in the District Court and

a circuit court, but rather that Johnson simply never satisfactorily received proper and full advisements under any combination of circumstances.[17]  Thus, the "holding" in *Johnson*, alluded to by Broadwater, that the Rule did not contemplate Johnson receiving properly the section (a) litany at the combined District Court and Circuit Court appearances, is at best dicta because the case necessarily rested only on the determination that the defendant did not receive a correct or complete litany of advisements at any time throughout the course of his "countable" court appearances.

Our synthesis of the cases suggests that, so long as the Circuit Court did not possess exclusive original jurisdiction over the charges, and a defendant's case is transferred from the District Court to the Circuit Court as the result of a jury trial demand, the requirements of Rule 4–215(a) may be fulfilled in piecemeal, cumulative fashion by advisements rendered by judges of the District and Circuit Courts.  Although *Johnson* stands for the proposition that a Circuit Court judge may not rely on advisements given during a District Court bail review hearing where the charges involved ultimately were within the exclusive original jurisdiction of the Circuit Court, *Gregg* indicates that a Circuit Court judge may rely on the advisements of other circuit court judges in a case to complete a Rule 4–215 litany, necessarily filling in only the gaps in the litany from the prior appearances.  The logical application of *Gregg* and *Johnson*, informed by *Moore* and *Richardson* and the Court of Special Appeals's *McCracken*, is that a circuit court judge may rely on the Rule 4–215(a) advisements given by a District Court judge, and supplement them as necessary, so long as the case properly began in the District Court's jurisdiction, based on the crimes charged, and was transferred to the Circuit Court when the defendant prayed a jury trial.

---

**17.** Similarly, we noted that, because at his bail review hearing the charging documents had not been filed, advisements (a)(1) and (3) would have been impossible to satisfy at that stage and thus, combined with the fact that no Circuit Court judge gave Johnson the litany of advisements, (a)(1) and (3) never were satisfactorily given to the defendant.  *Johnson*, 355 Md. at 457, 735 A.2d at 1023.

This outcome is simply an extension of our reasoning in *Gregg*, and leaves *Johnson* to govern situations where the Circuit Court has exclusive original jurisdiction over the pertinent charges.

An examination of the purpose of Rule 4–215 also supports our conclusion. In submitting the proposed text of what substantively became Rule 4–215, the Court's Standing Committee on the Rules of Practice and Procedure "recommended that the Rule 4–215(a) advisement of rights and penalties be conducted upon a defendant's first appearance in court so that a subsequent judge would have greater power to 'curtail . . . abusive tactics.'" *Bowers v. State*, 124 Md.App. 401, 412, 722 A.2d 419, 424–25, *cert. denied*, 354 Md. 113, 729 A.2d 405 (1999). The Rule was not developed, however, in order to provide criminal defendants with an added technical protection. *Id.* If a judge were to omit part of the litany of advisements and inquiries due the defendant, "[i]t was contemplated by the Committee that . . . the State could point out the problem to a subsequent judge 'so that it can be rectified.'" *Bowers*, 124 Md.App. at 412, 722 A.2d at 425. Thus, the Rules Committee foresaw that a subsequent judge would be able to "fill in" gaps in the advisement litany created by omissions by his or her predecessors and thus complete the required litany.

Finally, the wording of the Rule suggests that a piecemeal approach to 4–215(a) advisements may be acceptable. Rule 4–215(a) states that the advisements must be given "if the record does not disclose prior compliance." Md. Rule 4–215(a). It reasonably may be inferred from this language that the Rule contemplates that the mandatory advisements may be given by a court or courts over multiple encounters with a defendant, and that judges may supplement the advisements omitted or incorrectly given by their predecessors. Md. Rule 4–215(a); *see Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141, 892 A.2d 479, 493 (2006) (explaining that, "[i]f the statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as written"). Nowhere in the Rule is there the hint that all of the advisements must be given in a single, omnibus

hearing, in a continuous, uninterrupted recitation, in all situations. *See Harford County v. Saks Fifth Ave. Distrib. Co.,* 399 Md. 73, 86, 923 A.2d 1, 9 (2007) ("[W]e will not read into the statute words that give it an interpretation that limits or extends its application beyond the words the Legislature used"). Although it may be desirable, or even a best practice, to administer the advisements at a single appearance, were we to adopt Broadwater's interpretation of the Rule, the phrase, "if the record does not disclose prior compliance," would be read out of the Rule or rendered meaningless. *See Patterson Park Pub. Charter Sch., Inc. v. Balt. Teachers Union,* 399 Md. 174, 197, 923 A.2d 60, 74 (2007) ("We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory' ") (quoting *Prop. & Cas. Ins. Guar. Corp. v. Yanni,* 397 Md. 474, 481, 919 A.2d 1, 5 (2007)).

We acknowledge that a serialized approach to compliance with the advisements required by Rule 4–215(a) may carry a somewhat heightened risk of fostering confusion or fall prey to forgetfulness on the part of a defendant as to his or her implicated rights and the peril of inaction on his or her part in effectuating the rights. This, we believe, may be protected against in the course of a case-by-case analysis of the particular record in a case where waiver is found. If sufficient indicia persuade a trial or appellate court that a defendant's inaction was attributable, to a meaningful degree, to confusion on his or her part as to the right to counsel and the consequence of inaction because of the serialized rendition of the preliminary advisements, justice can be tailored in such a case. In the present case, we undertake that analysis next.

## C.

### *Judge Tisdale's Finding of Waiver by Broadwater of Her Right to Counsel*

Broadwater alleges that, even if a piecemeal approach to the 4–215(a) advisements is considered sufficient in her

case, the Circuit Court nevertheless abused its discretion
when it rejected her explanation for being without counsel on
14 February 2005, finding that she waived, through inaction,
her right to be represented by counsel pursuant to Rule 4–
215(d), and requiring that she represent herself at trial. In
order to persuade us that the trial judge abused his discretion,
Broadwater must demonstrate that the court ignored informa-
tion relevant to whether her inaction constituted waiver or
failed to meet its obligation to make "such inquiry as is
required to permit it to exercise discretion required by the
rule." *Mitchell v. State*, 337 Md. 509, 516, 654 A.2d 1309, 1313
(1995); *see also Felder*, 106 Md.App. at 650–51, 666 A.2d at
876 (explaining that waiver decisions must generally be "en-
trusted to the wide discretion of the trial judge").

Broadwater's explanation on 14 February 2005 for why she
appeared for trial without counsel was that certain perceived
discrepancies revealed by discovery responses provided to her
by the State convinced her, only days before trial, that she
needed to retain an attorney, and that she could not proceed
*pro se* as she had planned. Judge Tisdale determined that
this was not a meritorious excuse, found waiver, and proceed-
ed to trial, requiring that Broadwater represent herself. She
now alleges that Judge Tisdale abused his discretion because
only a two-week postponement was required in order for her
to obtain representation from the Public Defender. She ar-
gues that, because the case required only a few witnesses and
jurors, postponement would not have been a serious inconven-
ience to the court or the State.

There is no prescribed or set form of inquiry that
must precede a trial judge's finding of waiver under Rule 4–
215(b)–(e). Before the Circuit Court judge may find waiver
pursuant to 4–215(d), however, he or she must allow the
defendant to explain his or her appearance without counsel
and, through inquiry, determine whether the defendant's rea-
son is meritorious. As the Court of Special Appeals has
observed,

[i]n determining whether the defendant's reason is meritorious, the court's inquiry (1) must be sufficient to permit it to exercise its discretion ... (2) must not ignore information relevant to whether the defendant's inaction constitutes waiver ... and (3) must reflect that the court actually considered the defendant's reasons for appearing without counsel before making a decision.

*McCracken,* 150 Md.App. at 356–57, 820 A.2d at 609; *see also Gray v. State,* 338 Md. 106, 112, 656 A.2d 766, 769 (1995) (explaining that "[i]t is not enough that a defendant is allowed to make an explanation 'sufficient to allow the court to determine whether the reason is meritorious'; rather, 'the record must also be sufficient to reflect that the court actually considered those reasons' ") (quoting *Moore,* 331 Md. at 186, 626 A.2d at 971).

We have concluded that a trial court abused its discretion in finding a waiver of the right to counsel: by not inquiring into the merits of a defendant's reason for appearing before the court without counsel, *Maus v. State,* 311 Md. 85, 113, 532 A.2d 1066, 1080 (1987); by not inquiring further when a defendant explained that he had just become employed and, therefore, did not qualify for the Public Defender's Service, *Moore,* 331 Md. at 182, 626 A.2d at 970; and where the trial court found waiver after a defendant explained that his lawyer, who also was representing a co-defendant, suffered from a conflict of interest and was forced to withdraw his appearance. *Crowder v. State,* 305 Md. 654, 664, 506 A.2d 240, 245 (1986). On the other hand, we have declined to find abuse of discretion in finding waiver where a defendant discharged counsel, without justification, shortly before trial, and requested the court to appoint new counsel. *Fowlkes v. State,* 311 Md. 586, 604, 536 A.2d 1149, 1158 (1988). In the instant case, the record shows that the Circuit Court complied with the requirements of Rule 4–215(d) in finding waiver by inaction. The trial court examined Broadwater's offered explanations as to why she had appeared numerous times in court without counsel, asked her about the problems she perceived with the State's particular discovery responses, and determined that, in

light of the fact that she had approximately five months in which to retain an attorney after being told the first time of the importance of counsel, she effectively waived her right to counsel by inaction. Our perusal of the record also leads us inevitably to the conclusion that Broadwater was in no way confused about this right or the peril of inaction by the manner in which she received the advisements under Rule 4–215(a).

Her contention on 14 February 2005 that she would have been able to secure representation from the Public Defender's Office had a two-week postponement been granted does not suggest remotely that Judge Tisdale abused his discretion in denying that relief and finding waiver. From the time of her first hearing in the Circuit Court, where she was informed of the importance of retaining counsel, and of her right to free representation by the Public Defender, if she qualified, Broadwater had four months to ascertain whether she so qualified or, failing that, to find private counsel. She vacillated in her reasons from her 21 September 2004 representation to Judge Ambrose in the District Court, where she claimed to have selected a private counsel to represent her, to the 8 October 2004 hearing where she failed to explain adequately why, having contacted the Public Defender, she neglected to follow up to determine whether she qualified for assigned legal counsel. Instead, she iterated that she did not know if the Public Defender tried to reach her as she had not picked up her mail at her residence address for three months (or apparently made other arrangements to receive mail). She alluded to suffering from fibromyalgia, but never explained how that condition prevented her from securing counsel. Finally, she stated she did not seek to engage counsel earlier because she was afraid a Public Defender would "plead [her case] out." Judge Tisdale again explained to her the importance of counsel and the potential for a future finding of waiver by inaction:

THE COURT: An attorney can assist you by evaluating the charges and the facts of the case and advising you how to proceed in connected court proceedings on your behalf. As I told you, if you come to court on the 8th of November

without an attorney, you likely won't be granted a continuance to retain one. Now, I know you've heard this same advice on a number of occasions, and a judge is going to look at this file and say, well, we've told her and told her, okay?

One month later, Broadwater again was advised of her rights and the risk of waiver by inaction if she appeared yet again without counsel:

THE COURT: Now, I'm going to tell you again what the judge already told you in October ... So I'm telling you that one more time so that when this case comes back here, the record is going to reflect you were advised of your right to a lawyer once again, and if you come back without a lawyer, the judge could find that you have waived your right to be represented by counsel, by a lawyer. Do you understand that, Ms. Broadwater?

BROADWATER: Yes, ma'am.

After reviewing these numerous admonitions on the record, Judge Tisdale ultimately determined that Broadwater, unjustifiably and without meritorious reason, refused or failed to secure counsel after having ample opportunity to do so. On this record, we are unwilling to conclude that that ruling constituted an abuse of discretion.

## III.

### Conclusion

We hold that the litany of advisements required by Rule 4–215(a) may be given satisfactorily to a defendant where the record shows a piecemeal and cumulative rendition of the advisements by successive judges of the District and Circuit Courts in those cases where the District Court had exclusive original jurisdiction of the charges at their inception and the case is transferred to the Circuit Court upon the defendant's prayer for a trial by jury. Although these advisements also may be given at one time in a single omnibus hearing, which should be the preferred mode of rendering the advisements, that is not the only modality through which compliance may be

achieved under the Rule. The predicate to finding a "knowing and intelligent" waiver of the right to counsel lies in the giving of the complete litany, whether at one occasion or in seriatim over multiple appearances in the same case, although in the latter instance care must be taken not to foster confusion on the defendant's part as to the implicated right and the potential consequences of inaction in pursuit of effectuating that right.

In the present case, the trial judge did not abuse his discretion in finding that Broadwater waived her right to be represented by counsel through inaction.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.

BELL, C.J., BATTAGLIA, and GREENE, JJ., Dissent.

Dissenting Opinion by BELL, Chief Judge, which BATTAGLIA and GREENE, JJ., join.

Today,

"We hold that the litany of advisements required by Rule 4–215(a) may be given satisfactorily to a defendant where the record shows a piecemeal and cumulative rendition of the advisements by successive judges of the District and Circuit Courts in those cases where the District Court had exclusive original jurisdiction of the charges at their inception and the case is transferred to the Circuit Court upon the defendant's prayer for trial by jury. Although these advisements also may be given at one time in a single omnibus hearing, which should be the preferred mode of rendering the advisements, that is not the only modality through which compliance may be achieved under the Rule. The predicate to finding a 'knowing and intelligent' waiver of the right to counsel lies in the giving of the complete litany, whether at one occasion or in seriatim over multiple appearances in the same case, although in the latter instance care must be taken not to foster confusion on the defendant's part as to the implicated right and the potential consequences of inaction in pursuit of effectuating that right."

401 Md. 175, 206–207, 931 A.2d 1098, 1116. This is an extraordinary holding, not simply for what it prescribes or because it effectively marginalizes, if not overrules, *Johnson v. State*, 355 Md. 420, 735 A.2d 1003 (1999), a case under ten (10) years vintage, but for the path it takes to achieve this result. By this holding, the majority also fails to give effect to, and, in fact, completely disregards, the most basic rule of Rule construction—to discern the intention of the promulgators of the Rule by reference to the words the promulgators used, instead, ignoring those words in favor of a flawed precedent, a result-oriented rationale, and a strained interpretation of *Johnson.*

Compliance with Maryland Rule 4–215(a) is, as subsection (d)[1] of the Rule, our cases, *see Johnson*, 355 Md. at 452, 735 A.2d at 1020 ("The express language of Md. Rule 4–215(d) states that for there to be an effective waiver by inaction, 'the record [must] show [ ] compliance with [the advisements found in] section (a) of this Rule . . . .' "), and cases therein cited, and the majority acknowledge, a prerequisite for finding that a defendant has waived counsel by inaction. It provides:

"(a) *First Appearance in Court Without Counsel.* At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not

---

1. Rule 4–215(d) provides:

   "*Waiver by Inaction—Circuit Court.* If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, *and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial,* the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial."
   (Emphasis added).

disclose prior compliance with this section by a judge, the court shall:

"(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

"(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

"(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

"(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

"(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

"The clerk shall note compliance with this section in the file or on the docket." Md. Rule 4–215(a) (hereinafter, "Rule 4–215(a)" or the "Rule").

Clearly and unambiguously, and by its terms neither prescribing nor implying the existence of any exception, Rule 4–215(a) requires the trial court, to whom it is directed and before whom the defendant is appearing, to discharge the duties precisely formulated and enumerated in the Rule. It is significant, in other words, that the Rule imposes on the court the burden of making each and every inquiry, and giving each and every advisement enumerated, whenever a defendant "first appear[s] in court without counsel, or . . . appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge," and that it does not countenance or contemplate partial inquiry and advisement, to be supplemented later by another court.

We construed Rule 4–215(a) in *Johnson*, reaching two (2) conclusions, in the form of holdings, that inform, or I should

say, should inform, the decision in this case. The first, that "compliance [with Rule 4–215(a)] must be strict and not simply substantial," 355 Md. at 446, 735 A.2d at 1017, "that substantial compliance with Md. Rule 4–215(a)(1)–(5) is not sufficient for there to be an effective Md. Rule 4–215(d) waiver of counsel by a defendant[,]" *id.* at 426, 735 A.2d at 1006, was in response to an argument by the State, reminiscent of the argument it makes here and that the majority accepts. The State, conceding that there had not been strict compliance with Rule 4–215(a) in that case, argued nevertheless that the waiver was effective, there having been substantial compliance. In particular, it relied on, *inter alia,*[2]

> "findings of the trial judge: (1) during Johnson's first court appearance before the District Court Commissioner, he was provided with a 'Notice of Advice of Right to Counsel' and an 'Initial Appearance Report,' which indicated that he had received the subsection (a) advisements; and (2) when Johnson appeared the next day before the District Court judge for his bail review hearing, a 'Bail Review Docket' form was completed and signed by the judge, indicating compliance with Md. Rule 4–215[,]"

*id.* at 425–426, 735 A.2d at 1006, and the completed Initial Appearance/VOP Information Sheet, which had been given to Johnson on his first appearance in Circuit Court and which indicated that the subsection (a) information had been provided to Johnson. *Id.* at 426, 735 A.2d at 1006.

In rejecting the State's argument, the *Johnson* court pointed to the "plain language" of the Rule and "review[ed] some of the primary cases in which this Court has examined Md. Rule 4–215 or its precursors," 355 Md. at 446, 735 A.2d at 1017, e.g.,

---

2. The State believed also that requirements of (a)(1) and (3) were substantially satisfied by virtue o f the fact that the charges remained the same between Johnson's District Court and Circuit Court appearances and that there was substantial compliance with subsection (a)(5) when Johnson received that advisement from a District Court judge during his bail review hearing. *Johnson v. State,* 355 Md. 420, 425, 735 A.2d 1003, 1006 (1999).

*Parren v. State,* 309 Md. 260, 523 A.2d 597 (1987) and *Moten v. State,* 339 Md. 407, 663 A.2d 593 (1995),[3] concluding:

"Md. Rule 4–215 is a bright line rule that requires strict compliance in order for there to be a 'knowing and intelligent' waiver of counsel by a defendant. In addition, the rule's provisions are mandatory, as indicated by the use of the word 'shall.' In this case, we are concerned with subsection (a), the advisements, and subsection (d), the waiver inquiry. The express language of Md. Rule 4–215(d)

---

3. In *Parren v. State,* having reiterated that Md. Rule 4–215 detailed a "precise procedure" that must be followed in "matters pertaining to waiver," 309 Md. 260, 278, 523 A.2d 597, 605–06 (1987), and that "our rules 'are not guides to the practice of law but precise rubrics "established to promote the orderly and efficient administration of justice and [that they] are to be read and followed," ' " *id.* at 280, 523 A.2d at 606–07, citing *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570, 270 A.2d 476 (1970); *State v. Bryan,* 284 Md. 152, 154–55, 395 A.2d 475 (1978), we addressed the importance of Md. Rule 4–215 in protecting a defendant's fundamental constitutional right to counsel:

"We remain satisfied that to protect the fundamental rights involved, to secure simplicity in procedure, and to promote fairness in administration ... the requirements of [Md.] Rule 4–215 are to be considered as mandatory. We reach this conclusion with consideration of the nature of the right with which the Rule is concerned and the unqualified recognition of the importance of that right by the Executive Department, the Legislative Department and the Judiciary Department of our State. Of great significance is that the Rule is uniformly couched in mandatory language. The commands to the court are that it 'shall' do the acts set out; the Rule mandates the court's conduct. We see no support in the Rule for a construction that "substantial compliance" with its requirements is sufficient. We refuse to depart from our holding in Bryan.*

* * *

"It is perfectly clear that the purpose of [Md.] Rule 4–215 is to protect that most important fundamental right to the effective assistance of counsel, which is basic to our adversary system of criminal justice, and which is guaranteed by the federal and Maryland constitutions to every defendant in all criminal prosecutions."

309 Md. at 280–82, 523 A.2d at 606–07. We adopted this discussion in *Johnson,* adding, however, the emphasis shown. 355 Md. at 447–448, 735 A.2d at 1017–18.

In *Moten v. State,* 339 Md. 407, 663 A.2d 593 (1995), following *Parren,* this Court held that a "harmless error analysis is inapplicable to a violation of Rule 4–215(a)(3)." *Id.* at 409, 663 A.2d at 595. We also held that "[O]nce subsections (a)(1)-(4) of Rule 4–215 were invoked, the trial court's failure to comply fully with its requirements rendered waivers of counsel ineffective." *Id.* at 411, 663 A.2d at 596.

states that for there to be an effective waiver by inaction, 'the record [must] show [ ] compliance with [the advisements found in] section (a) of this Rule....' Along with the plain language of the rule itself, *Parren, Moten,* and *Okon*[4] leave no doubt that Md. Rule 4–215 must be strictly complied with in order for a waiver to be effective. *See also Smith [v. State],* 88 Md.App. [32, 40,] 43, 591 A.2d [902, 905] 907 (1991) ('[T]he [plain] language of the Rules [requires us] to hold that the circuit court must comply with [Md.] Rule 4–215 in its entirety.')."

*Johnson,* 355 Md. at 452–53, 735 A.2d at 1020.

We had earlier noted that

"[t]he standard in Maryland for an effective waiver of counsel echoes the standard established by the Supreme Court in *Johnson [v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)], *Adams [v. United States,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942)], and *Argersinger [v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538 (1972)], ..., among other cases: to be valid, the waiver must be 'knowing and intelligent.' *Fowlkes v. State,* 311 Md. 586, 609, 536 A.2d 1149, 1161 (1988); *Maus v. State,* 311 Md. 85, 112, 532 A.2d 1066, 1079 (1987); *Howell v. State,* 293 Md. 232, 236, 443 A.2d 103, 105 (1982).

"Maryland Rule 4–215(a) implements the constitutional mandates for waiver of counsel, detailing a specific procedure that must be followed by the trial court in order for

---

4. *Okon v. State,* 346 Md. 249, 696 A.2d 441 (1997), which reaffirmed *Parren* and *Moten,* was also identified as one of the "trio of cases," in which this Court, "resist[ing] attempts to ease the strict requirements of Md. Rule 4–215," found that Md. Rule 4–215 is a " 'precise rubric' that mandates strict compliance in order for there to be an effective waiver of counsel by a criminal defendant." *Johnson,* 355 Md. at 446, 735 A.2d at 1017. The Court also acknowledged that the Court of Special Appeals had consistently so held in *Smith v. State,* 88 Md.App. 32, 40, 591 A.2d 902, 905 (1991) ("Maryland law is clear that the provisions of [Md.] Rule 4–215 are mandatory and substantial compliance is not sufficient.") and in *Evans v. State,* 84 Md.App. 573, 581, 581 A.2d 435, 439 (1990) ("[S]trict compliance with the rule is mandated....."). *Johnson,* 355 Md. at 449, 735 A.2d at 1019.

there to be a knowing and intelligent waiver. *Vincenti v. State*, 309 Md. 601, 604, 525 A.2d 1072, 1074 (1987); *Fowlkes*, 311 Md. at 609, 536 A.2d at 1161. Whether the defendant's waiver is expressly made to the judge by requesting to proceed to trial *pro se*, by inaction through simply appearing at trial without counsel present, or through discharging an attorney whose appearance has been entered, the trial court must comply with Md. Rule 4–215 in order for the defendant's waiver of counsel to be valid."

*Johnson*, 355 Md. at 443–44, 735 A.2d at 1016.

The majority distinguishes *Johnson* primarily—"[f]irst and most important" on the basis of jurisdiction. 401 Md. at 199, 931 A.2d at 1112. Therefore, it reasons that, because the charges against Johnson were within the exclusive original jurisdiction of the Circuit Court, Johnson "was required to receive his subsection (a) advisements from a circuit court judge," *id.*, quoting *Johnson*, 355 Md. at 457, 735 A.2d at 1023. The majority concludes from this fact, that *"Johnson*, thus, governs only situations where the Circuit Court possesses exclusive original jurisdiction." *Id.* Alternatively, the majority reasons, the deficiencies that we identified with regard to the advice received by Johnson in the District Court—the failure of the District Court judge to adequately advise him orally of the Rule 4–215(a) information, and the fact that the only oral advisements given were given by a District Court Commissioner, rather than a judge, *Johnson*, 355 Md. at 455, 735 A.2d at 1022, "reveal that our holding rested, not on the notion that Rule 4–215(a) may not be satisfied cumulatively by seriatim advisements delivered in the District Court and a circuit court, but rather that Johnson simply never satisfactorily received proper and full advisements under any combination of circumstances." 401 Md. at 199–200, 931 A.2d at 1112.[5]

---

5. The majority suggests that the petitioner's reliance on the *Johnson* holding, which it characterizes as "that the Rule did not contemplate Johnson receiving properly the section (a) litany at the combined District Court and Circuit Court appearances, is at best dicta," 401 Md.

It is, to be sure, a fact that the charges in this case, unlike those in *Johnson*, are within the exclusive jurisdiction of the District Court and the case, therefore, is in the Circuit Court for a jury trial, prayed in that court. It is not correct, however, that this fact explains the holding by this Court in *Johnson*. That holding was, you will recall, that Rule 4–215 is not only mandatory, but requires strict, not substantial, com-

---

175, 200, 931 A.2d 1098, 1112 (2007), reasoning that "the case necessarily rested only on the determination that the defendant did not receive a correct or complete litany of advisements at any time throughout the course of his 'countable' court appearances." *Id.* The majority is wrong. The *Johnson* court stated the issue as:

> "[W]hether a circuit court judge with exclusive original jurisdiction may determine that a defendant waived the right to counsel based on information provided to the defendant at his or her bail review hearing before a District Court judge. Specifically, we are being asked to determine whether waiver of counsel by inaction, as detailed in Maryland Rule 4–215(d), may occur in the absence of compliance with M d. Rule 4–215(a)(1)–(5)."

*Johnson*, 355 Md. at 424, 735 A.2d at 1005. Viewed in the context of what followed, it is clear that the issue was not the one the majority claims. Rather, the petitioner's focus is the correct one—she got it right.

The majority also relies on *Moore v. State*, 331 Md. 179, 184, 626 A.2d 968, 970 (1993), *Richardson v. State*, 381 Md. 348, 364–65, 849 A.2d 487, 497 (2004), and *McCracken v. State*, 150 Md.App. 330, 355, 820 A.2d 593, 608 (2003), for the proposition that "a circuit court judge may rely on the Rule 4–215(a) advisements given by a District Court judge, and supplement them as necessary, so long as the case properly began in the District Court's jurisdiction, based on the crimes charged, and was transferred to the Circuit Court when the defendant prayed a jury trial." 401 Md. at 200, 931 A.2d at 1113. Rule 4–215(d) now provides, as the cases cited confirm, that a Circuit Court judge can accept, and is not required to repeat, Rule 4–215(a) advisements when "the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial." The operative phrase in the Rule is "shows compliance." The Rule does not require a repetition of compliance, but it does not excuse noncompliance, and when the record shows partial—not complete—compliance, it does not "show compliance." Thus, it is not correct to say that Rule 4–215(d), or either of the cases cited, permits supplementation of incomplete advisements; certainly, neither the Rule nor those cases expressly provides for supplementation. Implying such a provision, I submit, changes the "strict compliance" standard, so well settled in this State, to, dare I say it, a "substantial compliance" one, a standard that, by the way, we rejected, and emphatically so, in *Johnson*.

pliance. *Johnson,* 355 Md. at 446, 735 A.2d at 1017. It was by way of rationalizing this holding that we engaged in an extended discussion of the right to counsel, acknowledging its fundamental nature, and Maryland law on the subject. It was in that context that we related our historic resistance to efforts to change, ease, the standard by which waivers of counsel are judged. It was our focus on the standard to be applied to the application of the Rule to which that discussion was directed. The jurisdictional issue did not warrant, not to mention require, the focus that we took in *Johnson,* and the extensive treatment we gave that approach.

As the majority correctly points out, the *Johnson* court, in rejecting the State's argument, referred to the difference in requirements, depending on the jurisdictional predicate. *See* 401 Md. at 199, 931 A.2d at 1112. It is significant that it did so in the context of the State's "substantial compliance" argument and, then, it offered that rationale not as a substitute for the strict compliance holding or as a "stand alone" holding, but only as an additional reason for the strict compliance holding. Only after the Court had stated its holding that the Rule must be strictly complied with and the reason for it—it vindicates the fundamental right to counsel [6]—did it mention the jurisdictional issue:

> "Further, a circuit court judge with exclusive original jurisdiction may not determine that Johnson waived counsel based on information provided to him at his bail review hearing before a District Court judge. Because Johnson's

---

**6.** On this point the Court was quite clear, even eloquent:

"This Court has on several occasions resisted attempts to relax the strictures of Md. Rule 4–215. We believe that any erosion of the rule's requirements would begin the dangerously slippery slope towards more exceptions. The right to assistance of counsel in criminal proceedings is a fundamental right; therefore, we indulge every reasonable presumption against waiver-whether such waiver is expressly made by the defendant or implied through his or her refusal or failure to obtain counsel. Maryland Rule 4–215 exists as a safeguard to the constitutional right to counsel, providing a precise 'checklist' that a judge must complete before a defendant's waiver can be considered valid; as such, it mandates strict compliance."
*Johnson,* 355 Md. at 426, 735 A.2d at 1006.

charges were not transferred to the circuit court on a jury trial demand, an advisement by a District Court judge, as opposed to a circuit court judge, was *not sufficient for strict compliance with Md. Rule 4–215.*"

*Johnson,* 355 Md. at 426, 735 A.2d at 1006 (emphasis added).

The majority cites *Gregg v. State,* 377 Md. 515, 833 A.2d 1040 (2003) as further support for the proposition that Rule 4–215(a) may be satisfied "in piecemeal, cumulative fashion by advisements rendered by judges of the District and Circuit Courts." 401 Md. at 200, 931 A.2d at 1112. It is true that one of this Court's holdings in that case was that cumulative piecemeal advisements by more than one Circuit Court judge is sufficient where the charges are within the exclusive jurisdiction of the Circuit Court.[7] It must be pointed out, however, that the more substantial issue had to do with the trial court's obligation to inquire as to the defendant's competency, *sua sponte,* consuming the vast majority of the majority's, and all of the dissent's, attention. *Gregg,* 377 Md. at 556, 833 A.2d at 1066 (dissenting opinion by Bell, C.J., in which Eldridge, J. joined). Indeed, as indicated, that issue divided the Court, and, as must be obvious, was a dispositive issue. In any event, the reasoning of *Gregg* on the Rule 4–215 issue can withstand scrutiny to no greater extent than can the reasoning in the instant case.

In this case, because, when the petitioner appeared in the Circuit Court, after having appeared in the District Court and prayed a jury trial, the record did not "show compliance" with the Rule 4–215(a) advisements, Rule 4–215(a) then imposed on the Circuit Court judge the duty to comply with its prescriptions. That duty was strictly to comply, not do so partially or supplement advisements already given. When that judge did not comply fully or strictly, the record continued not to "show

---

7. Curiously, the petitioner in *Gregg v. State,* 377 Md. 515, 833 A.2d 1040 (2003) argued that the advisements were deficient and could only be rendered sufficient if they were combined with advisements given by the District Court. *Gregg,* 377 Md. at 553–54, 833 A.2d at 1062–63. There thus is reason to question whether the issue decided actually was presented in that case.

compliance," thus charging the trial judge before whom the defendant may appear next with the corresponding and mandatory duty to comply. The second *Johnson* holding makes clear that this is so, and why. *See Johnson*, 355 Md. at 460–61, 735 A.2d at 1025.

Having rehearsed the advisements given Johnson, the Court rejected them as inadequate. Consequently, it held:

> "In short, any Md. Rule 4–215(a)(1)–(5) advisements that Johnson received were inadequate and given to him in an incomplete manner in different courts by different judges, all resulting in likely confusion on the part of the defendant. *Nowhere in the record is there evidence that any one circuit court judge went through the section (a) litany with Johnson, point-by-point as required.* Indeed, the record indicates that the only judge who mentioned Md. Rule 4–215 to Johnson was Judge Nalley on the day of his trial, and even then he did not go through the complete subsection (a) advisement. For the rule to be an effective constitutional safeguard, it contemplates defendants receiving the advisements during their 'first appearance in court without counsel,' well before the day of trial.

> "We conclude that to avoid confusion on the part of an accused and to protect the fundamental right to counsel, the subsection (a) advisements must be given in strict accordance with Md. Rule 4–215, by the correct court and not piecemeal. A 'knowing and intelligent' waiver of counsel can only occur when there is strict compliance with the rule."

*Johnson*, 355 Md. at 461, 735 A.2d at 1025 (emphasis added).

Thus, we made clear what strict compliance with Rule 4–215(a) advisements entails: a judge going through the advisements with the defendant "point-by-point as required," and "not piecemeal." On this, the Court could not have been clearer. Yet, the majority in the instant case disregards these holdings, in favor of a rationale that is not justified by the

*Johnson* opinion, but one that gets it to the result it seeks.[8] In doing so, the majority overrules, *sub silentio*, at least *Johnson, Parren*, and *Moten*, and at the same time, undermines the right to counsel and sends the wrong message, a message diametrically opposite to that previously sent with regard to the rules governing waiver of counsel and the effect of failing to comply with them. Rather than finding a way to avoid giving consequence to a trial judge's failure to abide by a rule that is directed to trial judges, indeed, demands of trial judges before whom defendants without attorneys appear, some action for the protection of those defendants' fundamental right to counsel, we would do well to enforce the Rule. Looking the other way begets nothing less than additional non-compliance; by so doing, we can look forward to other cases that will extend the limits. Enforcing compliance, on the other hand, has the potential of reducing the number of those cases. If, at the end of the day, the majority is intent on changing the law and the effect of our Rules, perhaps because compliance is too difficult to enforce or may be seen as too solicitous of the rights of defendants, it would be better to have the Rules reflect the reality on the ground. It simply will not do to have "precise rubrics," intended to be read and followed, to mean "sometimes" and "sometimes not," depending on the Rule. I dissent. Judges Battaglia and Greene have authorized me to state that they join me in this dissent.

---

**8.** There is a kind of "Humpty–Dumpty" quality to the majority's rationale; it is as if it is saying, to paraphrase Lewis Carroll, "The law is what we say it is, no more, no less." *See* Lewis Carroll, Through The Looking Glass (London, Macmillan 1872).