*Womack v. State*, No. 2962, September Term, 2018.

**CRIMINAL LAW — WAIVER OF COUNSEL — KNOWING AND INTELLIGENT WAIVER**

The circuit court did not strictly comply with Rule 4-215 prior to appellant's discharge of counsel, and despite the court's attempt to fix the initial failure to comply with the Rule, subsequent advisements did not "cure" the initial error. Although advisements under Rule 4-215(a) may be given in a piecemeal fashion, compliance with the Rule must be established *before* a valid waiver.

We are not suggesting that, if a trial court fails to strictly comply with Rule 4-215, the error can never be cured. It would be illogical to hold that a circuit court that fails to strictly comply with Rule 4-215 prior to a defendant's discharge of counsel can never remedy that failure, but instead must proceed with a trial that is guaranteed to be reversed on appeal. Rather, we construe Rule 4-215 to permit a court to "cure" an initial failure to comply with Rule 4-215 with subsequent advice to the defendant after the defendant has discharged counsel, but only if the court gives the defendant a chance to reconsider the discharge of counsel after the full advice is given.

Circuit Court for Baltimore City
Case No. 114112032-037

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2962

September Term, 2018

_____

LASER WOMACK

v.

STATE OF MARYLAND
_____

Meredith,
Graeff,
Harrell, Glenn T., Jr.
       (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Graeff, J.
_____

Filed:  January 30, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Appellant, Laser Womack, was convicted in the Circuit Court for Baltimore City of one count of second-degree murder and two counts of attempted second-degree murder. The court sentenced appellant to 30 years on the second-degree murder conviction. On the attempted second-degree murder convictions, it imposed consecutive 25-year sentences, all suspended on one conviction and all but ten years suspended on the other conviction.

On appeal,[1] appellant presents three questions for this Court's review, which we have rephrased slightly, as follows:

1. Did the circuit court commit reversible error when it failed to strictly comply with Rule 4-215?

2. Did the circuit court commit plain error by allowing the prosecutor to make improper and prejudicial remarks during his opening statement and closing arguments?

3. Did the circuit court commit plain error with its response to a jury note during deliberations?

For the reasons set forth below, we answer the first question in the affirmative, and therefore, we shall reverse the judgments of the circuit court.[2]

---

[1] At a post-conviction hearing on November 28, 2018, the parties agreed that the Office of the Public Defender had rendered ineffective assistance of counsel by not noting a timely appeal upon appellant's request that it do so. Appellant was granted permission to note a belated appeal, which he did on December 14, 2018.

[2] Based on our resolution of the first issue, and because the other issues may not arise on retrial, we will not address the second and third issues presented.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

On March 25, 2014, shortly after 10:00 p.m., Johniece Sheppard, Alisha Gibson, and Marcus Munford were shot inside a rowhouse in Baltimore City.[4]  Ms. Sheppard was shot eight times, and she died from her injuries.  Ms. Gibson and Mr. Munford also were shot multiple times, but they survived.

The shooting occurred at the residence of Sherry Wallace.  Ms. Wallace had known appellant for approximately 20 years.  Appellant lived around the corner with a man known as "Nice."

Ms. Gibson testified at trial that, on the evening of the shooting, appellant walked into Ms. Wallace's house at approximately 10:00 p.m. with two men, one of whom was DeShawn Richardson.  One of the men asked Ms. Gibson and the others where the drugs were located.  All three replied that they did not know.  Appellant, who had gone upstairs and talked with Tajuan Barnes, Ms. Wallace's son, advised Mr. Richardson and the other man that there was no one upstairs.  Mr. Richardson and the other man then shot Ms. Gibson, Ms. Sheppard, and Mr. Munford, repeatedly.

Ms. Gibson recalled Mr. Barnes speaking to her after the shooting.  She stated that, when he asked who shot her, she told him "Laser" because it was "the only name [she] could say at the time."  She testified that she did not see appellant shoot anyone or

---

[3] Because the sole issue is whether the circuit court complied with Maryland Rule 4-215, we will provide only a brief summary of the facts.

[4] Mr. Munford's name is spelled "Mumford" in the briefs and in various locations in the record.  We use the spelling given by Mr. Munford during his trial testimony and that used on the indictments and in his medical records.

have a gun in his possession.  He arrived at the house with Mr. Richardson and the other shooter, however, and left with them after the shooting.

On March 26, 2014, appellant was arrested and interviewed by Baltimore City Police Detective Raymond Yost.  Appellant denied any knowledge of the shooting.

The next day, however, appellant told a captain at Central Booking, where he was being detained, that he wished to speak to Detective Yost again.  In his second interview, appellant admitted that he was present at the shooting.  He explained that, on March 25, 2014, he went to Ms. Wallace's house to visit Mr. Barnes.  At the time, Mr. Richardson and "Nice" were at the house appellant shared with "Nice."  When appellant came downstairs from visiting Mr. Barnes, however, Mr. Richardson and "Nice" were there and had guns drawn on Ms. Sheppard, Ms. Gibson, and Mr. Munford.  Mr. Richardson told appellant to leave, and appellant "went out back[.]"  He then heard shots fired.

Appellant was charged, in multiple indictments, of first-degree murder of Ms. Sheppard, attempted first-degree murder of Ms. Gibson, attempted first-degree murder of Mr. Munford, three counts of conspiracy to commit murder, three counts of use of a firearm in the commission of a crime of violence, and three counts of wearing, carrying, and transporting a handgun.  At the end of all the evidence, the State declined to send the three counts of wearing, carrying, and transporting a handgun to the jury.  The remaining charges, as well as the lesser included offenses of second-degree murder and attempted second-degree murder, were sent to the jury.  The jury acquitted appellant of first-degree murder of Ms. Sheppard, attempted first-degree murders of Ms. Gibson and Mr. Munford, conspiracy to murder the three victims, and use of a firearm in the commission

of a crime of violence against the three victims.  The jury convicted appellant of the second-degree murder of Ms. Sheppard and attempted second-degree murder of Ms. Gibson and Mr. Munford.

This appeal followed.

## DISCUSSION

Appellant contends that his convictions should be reversed because the circuit court failed to strictly comply with Maryland Rule 4-215 before it allowed him to discharge his assigned public defender at a pretrial hearing on January 23, 2015.  He asserts three errors in this regard.  First, appellant argues that the prosecutor, as opposed to the court, advised him regarding the majority of the charges he was facing.  Second, appellant contends that no one accurately informed him of the nature of several of the charges against him, i.e., the three charges of use of a firearm in the commission of a crime of violence and the charge of conspiracy to murder Mr. Munford.  Third, appellant asserts that no one accurately informed him of the penalties he faced for multiple charges, including failing to advise:  (a) regarding the penalties he faced with respect to the charges relating to Mr. Munford, and (b) that the penalties for convictions on the charges of use of a firearm in the commission of a crime of violence would include mandatory minimum sentences of five years without parole, and for each subsequent violation, the sentence would be consecutive to the sentence imposed for the crime of violence.

The State does not argue that the court complied with the Rule at the January 2015 hearing, implicitly conceding that there was not compliance at that time.  It argues, however, that the court "cured any initial errors" at a subsequent hearing in December

-4-

2015.  It asserts that strict compliance with Rule 4-215(a) may be found even when the required advisements are given "in a piecemeal and cumulative fashion over the course of multiple appearances," and therefore, reversal is not required.

Appellant disagrees, for two reasons.  First, he notes that the cases in which the Court of Appeals held that piecemeal satisfaction of the Rule is permitted involved satisfaction of the Rule prior to the circuit court's acceptance of the defendant's waiver of the right to counsel.  In this case, however, the curative steps that the court took to remedy its deficient advisements on January 23, 2015, occurred months after the court accepted appellant's waiver of his right to counsel, and therefore, he asserts that these curative advisements were ineffective.  Second, appellant contends that, even at the later hearing, the court did not strictly comply with Rule 4-215(a)(3) because it did not advise him that, if he was convicted of multiple counts on the charges of use of a firearm in the commission of a crime of violence, he was subject to mandatory consecutive sentences.

**A.**

**Maryland Rule 4-215**

The Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee that, "[i]n all criminal prosecutions," the defendant shall have the right to counsel.  U.S. Const., amend. VI; Md. Decl. of Rights, art. 21; *Broadwater v. State*, 401 Md. 175, 179 (2007).  To implement and protect "this fundamental right to counsel," the Court of Appeals adopted Rule 4-215, governing the waiver of counsel in criminal cases.  *Knox v. State*, 404 Md. 76, 87 (2008).  The Rule

explicates the method by which the right to counsel may be waived by those defendants willing to represent themselves, . . . and the necessary litany of advisements that must be given to all criminal defendants before any finding of express or implied waiver of the right to be represented by counsel may be valid.

*Broadwater,* 401 Md. at 180 (footnote omitted). The function of the Rule is "'to ensure that [the decision to waive counsel] is "made with eyes open"'" and that the defendant has undertaken waiver in a 'knowing and intelligent' fashion." *Id.* at 181 (quoting *State v. Brown*, 342 Md. 404, 414 (1996)).

Rule 4-215 is a "precise rubric." *Parren v. State*, 309 Md. 260, 280 (1987). The Court of Appeals has held that the Rule's procedures are "mandatory," subject to "strict compliance," and a "departure from [those] requirements . . . constitutes reversible error." *Pinkney v. State*, 427 Md. 77, 87–88 (2012). *Accord Broadwater*, 401 Md. at 182 ("Strict, not substantial, compliance with the advisement and inquiry terms of the Rule is required in order to support a valid waiver.").

Subsection (e) governs discharge of counsel. It provides as follows:

**(e) Discharge of Counsel--Waiver.** If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

Thus, in the situation presented here, where the court finds that a defendant does not have a meritorious reason to discharge counsel, the court must advise the defendant that "trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel." Md. Rule 4-215(e). If the "court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance." *Id.*

Subsection (a) of Rule 4-215 provides that "the court shall":

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.
(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.
(3) *Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.*
(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(Emphasis added.)[5]

---

[5] Subsection (b) provides:

If a defendant who is not represented by counsel indicates a desire to waive counsel, the court may not accept the waiver until after an examination of the defendant on the record conducted by the court, the State's Attorney, or both, the court determines and announces on the record that the defendant is knowingly and voluntarily waiving the right to counsel. If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing date will be

The sole contention on appeal in this case is that the court failed to comply with subsection (a)(3), which requires the court to advise the defendant of the nature of the charges and the allowable penalties. This provision "exists to ensure that a defendant is made aware of all pending charges and associated penalties." *Brye v. State*, 410 Md. 623, 637 (2009). Violations of this provision are not subject to a harmless error analysis. *Moten v. State*, 339 Md. 407, 409 (1995). *Accord Brye*, 410 Md. at 637.

With that case law in mind, we address more specifically the facts and contentions of this case.

**B.**

**Initial Advice Prior to Discharge of Counsel**

On January 23, 2015, appellant's trial was scheduled to commence. He appeared with assigned counsel from the Office of the Public Defender. At the outset of the hearing, defense counsel asked for a postponement. She informed the court that she thought that the case was going to be resolved with a plea, but negotiations had stalled. Counsel then stated, and appellant confirmed, that he wanted to discharge counsel.

The court placed appellant under oath and proceeded to ask him a series of questions about his age, his education level, and his mental state. The court confirmed that appellant had received a copy of the charging document. The following colloquy then ensued:

---

granted to obtain counsel unless the court finds it is in the interest of justice to do so.

Md. Rule 4-215(b).

THE COURT: All right. And since this hasn't been done on the record, so what is – Madame State, if you have the indictment, what is Mr. Womack charged with?

[PROSECUTOR]: Your Honor, Mr. Womack is charged with murder in the first degree and under the indictment ending in 32 [relating to Ms. Sheppard]; murder in the first degree, handgun, wear, carry. Under the –

THE COURT: Well, hang on one second. He's charged with first degree murder. Is this premeditated murder?

[PROSECUTOR]: Yes.

THE COURT: Sir, do you understand the nature and elements of first degree murder?

[APPELLANT]: Yes, sir.

THE COURT: All right. And the maximum penalty is life. Do you understand that?

[APPELLANT]: Yes, sir.

THE COURT: All right. What's the next count?

[PROSECUTOR]: The next count in that, in the indictment ending in 32 is handgun crime of violence.

THE COURT: All right. So that carries with it what, a maximum penalty of 20 years, the first five is without the possibility of parole?

[PROSECUTOR]: That is correct.

THE COURT: Sir, do you understand the nature and elements of that particular charge?

[APPELLANT]: Yes, sir.

THE COURT: And you understand the penalties?

[APPELLANT]: Yes, sir.

THE COURT: Okay.

[PROSECUTOR]: The next count in that indictment is wear, carry and transporting a handgun.

THE COURT: All right. And that carries with it a maximum penalty of three years. Do you understand that charge?

[APPELLANT]: Yes, sir.

THE COURT: And do you understand the penalties?

[APPELLANT]: Yes, sir.

THE COURT: Okay.

[PROSECUTOR]: The next indictment is the indictment ending in 33 and he is charged with conspiracy to murder Ms. [Johniece] Sheppard.

THE COURT: Okay. And that carries with it a maximum penalty of life as well.

[PROSECUTOR]: That is correct.

THE COURT: Sir, do you –

[APPELLANT]: Your Honor, Your Honor, I never received any documentations of me being – having a conspiracy to a murder of the victim that she just said and I have both the motion –

THE COURT: Well, what I'm doing here right now, Mr. Womack, is I just need to know that you one; understand the nature and elements of the charges and you understand the penalties.

[APPELLANT]: Yes, sir.

THE COURT: I'm not going to address any sort of defenses or other issues you may have. Do you understand that?

[APPELLANT]: Yes, sir.

THE COURT: Do you understand the charge of conspiracy to commit murder?

[APPELLANT]: Yes, sir.

THE COURT: You know the nature and elements of that charge?

[APPELLANT]: Yes, sir.

THE COURT: You understand you could receive a sentence of life. Do you understand that?

[APPELLANT]: Yes, sir.

THE COURT: Your next – the next charge?

[PROSECUTOR]: The next indictment is the indictment ending in 34 where he's charged with the attempted murder of Ali[sh]a Gibson.

THE COURT: This is separate and apart; right?

[PROSECUTOR]: It's part of the same indictment, but it's a separate victim.

THE COURT: There's one alleged victim who was unfortunately murdered and now we have an attempted murder. Okay. And that's attempted first degree murder?

[PROSECUTOR]: Yes.

THE COURT: And that carries also with it a penalty of – a maximum penalty of life. Do you understand that, sir?

[APPELLANT]: Yes, sir.

THE COURT: And again, do you understand the nature and elements of attempted first degree murder?

[APPELLANT]: Yes, sir.

THE COURT: Okay.

[PROSECUTOR]: And also in that indictment is handgun crime of violence and wear, carry and transport a handgun.

-11-

THE COURT: Is that the conspiracy?

[PROSECUTOR]: No. That's for the attempted murder.

THE COURT: For that particular count. Okay. And for that particular attempted murder, sir, you're also charged with use of a handgun in commission of a crime of violence. You understand that count as well?

[APPELLANT]: Yes, sir.

THE COURT: And you understand you could receive a maximum of 20 years on that, the first five without parole?

[APPELLANT]: Yes, sir.

THE COURT: Okay. And then there's also the wear, carry and transport a handgun which is also another three years.

[APPELLANT]: Yes.

THE COURT: Do you understand that charge? What else, [prosecutor]?

[PROSECUTOR]: Under the indictment ending in 035 he is charged with conspiracy to murder Ms. [Alisha] Gibson.

THE COURT: Is this the same for the attempted murder?

[PROSECUTOR]: Yes.

THE COURT: Okay. So again, sir, you understand you're charged in a separate count for conspiracy to commit – to attempt to commit second – or first degree murder. Do you understand that charge? And that carries with it a maximum penalty of life. You understand that?

[APPELLANT]: Yes, sir.

[PROSECUTOR]: Under the indictment ending in 036 he is charged with the attempted murder of Marcus Mu[n]ford.

THE COURT: Okay. All right. And that is a third separate victim; is that right? And, sir, again, do you understand that particular charge and the penalty for that charge?

-12-

[APPELLANT]: Yes, sir.

THE COURT: Okay.

[PROSECUTOR]: He's also charged with handgun commission in a crime of violence and wear, carry in that indictment. And –

THE COURT: All right. And, sir, you understand again those charges – the charges themselves, the elements of them are the same. We're talking about different victims. You understand that, sir?

[APPELLANT]: Yes, sir.

THE COURT: Okay. And he's also charged with conspiracy in that one as well?

[PROSECUTOR]: Yes.

THE COURT: Okay. What else?

[PROSECUTOR]: That's all, Your Honor.

THE COURT: So, sir, I have no idea if you're going to be found guilty of anything in this case, but if you go to trial and you are found guilty, you could be charged [sic] and you could receive a sentence of six life sentences.

[APPELLANT]: Yes, sir.

THE COURT: They could be consecutive. And on top of that it appears you have 23 years, 20, 46 years, 69 years consecutive to that. That's for the handgun charges. Do you understand that? Do you have any questions about your charges that you are facing? Natures [sic] or elements or the penalties?

At that juncture, appellant asked the court how he could be charged with murder and weapons crimes when the surviving victims both gave statements saying that he was not the shooter and did not have a gun. The court responded that appellant might have defenses to the charges, but the issue at the hearing was whether he understood "what [he

was] facing." Appellant replied: "I most definitely do." The court proceeded to further advise appellant about his right to counsel and the assistance trained counsel could offer him prior to and during trial. At the end of that colloquy, the court found that appellant had "the intelligence [and] capacity to appreciate the consequences of the decision [to waive counsel]" and asked what he was asking the court to do. Appellant replied that he wanted to "strike [the] appearance" of his assigned counsel.

The court then asked appellant about the reasons for his request to discharge his counsel. Appellant stated that he believed that defense counsel was "in cahoots" with the prosecutor and lacked faith in his chances of winning at trial. The court found that appellant's reason for requesting to discharge his attorney was not meritorious.

The court then advised appellant that it was the policy of the Office of the Public Defender not to assign a new attorney if an indigent defendant fired his assigned attorney. The court emphasized that if appellant discharged his attorney, he would be obligated to hire private counsel or represent himself at trial, and that his trial date would not be postponed to allow him to find new counsel. Appellant stated that he understood, and he wished to discharge his counsel. The court granted appellant's request to discharge his attorney. It then granted the State's unopposed request for a five-day postponement of trial to January 28, 2015.[6]

---

[6] The State requested the postponement to determine if it could try appellant and his co-defendant, Mr. Richardson, jointly. It ultimately did not try appellant and Mr. Richardson together.

As indicated, appellant contends, and the State does not argue to the contrary, that the court did not strictly comply with Rule 4-215(a)(3) at the January 23, 2015, hearing, when appellant discharged his counsel. We agree that there was not strict compliance with the Rule at that point.

Initially, this Court stated, in *Webb v. State*, 144 Md. App. 729, 742–44 (2002), that Rule 4-215 requires that the requisite advisements be given by a judge, and advisements by the prosecutor regarding the nature of the charges and penalties did not constitute strict compliance with the Rule. Here, as in *Webb*, the prosecutor, as opposed to the court, advised appellant of the majority of the charges.

Moreover, the nature of some of the charges was not explained. For example, with respect to one charge of use of a firearm in the commission of a crime of violence, the prosecutor stated that appellant was charged with "handgun crime of violence." Although Rule 4-215 "does not require a *verbatim* recitation" of the charges, the court must make sure that a defendant is made aware of all pending charges. *Peterson v. State*, 196 Md. App. 563, 578 (2010). The recitation of the charges by the prosecutor here arguably did not clearly convey to a layperson the crime charged.

The court also failed to advise appellant regarding mandatory penalties with respect to the charges of use of a firearm in the commission of a crime of violence. Maryland Code (2012 Repl. Vol.), § 4-204 of the Criminal Law Article ("CR"), which proscribes use of a firearm in the commission of a crime of violence, provides, in part, as follows:

(c)(1)(i) A person who violates this section is guilty of a misdemeanor and, in addition to any other penalty imposed for the crime of violence or felony, shall be sentenced to imprisonment for not less than 5 years and not exceeding 20 years.

(ii) The court may not impose less than the minimum sentence of 5 years and, except as otherwise provided in § 4-305 of the Correctional Services Article, the person is not eligible for parole in less than 5 years.

(2) For each subsequent violation, the sentence shall be consecutive to and not concurrent with any other sentence imposed for the crime of violence or felony.

CR § 4-204(c).

Although the court advised that the maximum penalty for a conviction of use of a firearm in the commission of a crime of violence was 20 years, the first five years without the possibility of parole, it did not tell appellant that the five years without parole was a mandatory minimum sentence. *See Knox v. State*, 404 Md. at 91 ("A defendant may not evaluate the risks of forgoing the assistance of counsel effectively without knowing that there is a mandatory minimum term of imprisonment attached to his potential conviction."). And the court did not tell appellant that, "[f]or each subsequent violation, the sentence shall be consecutive to and not concurrent with any other sentence imposed for the crime of violence or felony."[7] Accordingly, the court did not strictly comply with Rule 4-215(a)(3) on January 23, 2015, prior to allowing appellant to

---

[7] When a defendant is convicted of use of a firearm in the commission of a crime of violence, Maryland Code (2012 Repl. Vol.), § 4-204(c) of the Criminal Law Article mandates that the court impose a minimum of five years on each count, and in a situation where there is a second conviction, a "subsequent violation," the sentence imposed must be a consecutive sentence. *See Garner v. State*, 442 Md. 226, 253 (2015).

discharge his counsel.[8]  Typically, the court's failure to strictly comply with Rule 4-215(a)(3) would require reversal of appellant's convictions.

## C.

### Subsequent Advisements to Cure the Initial Error

The State contends, however, that, despite the court's initial failure to strictly comply with the requirements of Rule 4-215, reversal of appellant's convictions is not required because, based on subsequent advisements, the court cumulatively satisfied the Rule.  We thus look at the proceedings following the January 23, 2015, discharge of counsel.

### 1.

### Proceedings Below

Following the January 23, 2015, hearing, appellant appeared, without counsel, at five proceedings during which postponement requests were granted.  On January 28, 2015, the court again made sure that appellant understood that, based on his decision to discharge his assigned public defender, he needed to get a private attorney or represent himself.  The court also explained the benefits of having an attorney.  Appellant then stated that he had a question about the conspiracy counts, stating that the "arrest form"

---

[8] It may be that the failure to advise on the mandatory nature of the five-year sentences for convictions of use of a firearm in the commission of a crime of violence was inconsequential, given that the court did advise appellant that he was subject to "six life sentences . . . [and] 69 years consecutive to that."  The Court of Appeals, however, has repeatedly held that "harmless error analysis is inapplicable to a violation of Rule 4-215(a)(3)." *State v. Camper*, 415 Md. 44, 57 (2010) (quoting *Moten v. State*, 339 Md. 407, 409 (1995)).

did not contain any reference to conspiracy. The court then went over all the charges and penalties in the indictment, advising appellant that, with respect to Ms. Gibson, he was charged with attempted murder, which carried a life sentence, conspiracy to commit murder, which also carried a life sentence, use of a firearm in the commission of a crime of violence, which was subject to a sentence of 20 years, the first five without parole. With respect to Mr. Munford, the court advised that appellant was charged with the same crimes and subject to the same sentences. And with respect to Ms. Sheppard, the court advised that appellant was charged with murder, subject to a maximum penalty of life, conspiracy, with a maximum penalty of life, "firearm in commission of a crime of violence," with a maximum penalty of 20 years, the first five without parole, and "wear, carry, transport a handgun, three years." The court urged appellant to proceed to trial with the assistance of counsel, and it postponed the case to April 13, 2015.[9]

At the hearing on April 13, 2015, the court asked appellant why he was unrepresented. Appellant stated that he fired his attorney because she was not properly representing him. He stated that he wanted another attorney, but he did not "have the means" to get one. The court stated that appellant could get a private attorney, ask the public defender's office to reconsider, or ask the court to appoint someone to represent him, but given the serious charges, appellant should be represented. The court postponed the case.

---

[9] During this hearing, the court did not discuss two counts of wearing, carrying, and transporting a firearm.

At the June 23, 2015, hearing, the prosecutor offered appellant a plea deal where, in exchange for a guilty plea to first-degree murder, appellant would receive a sentence of life, suspend all but 55 years. The circuit court then revisited whether there had been compliance with Rule 4-215. The prosecutor, who was not the same prosecutor assigned to the case in January 2015, listened to the tape of the January 23, 2015, proceedings and advised the court that there had been "a very thorough, comprehensive advisement following Maryland Rule 4-215 in which the court ultimately found that there was no meritorious reason" for appellant to discharge his attorney. The prosecutor stated that the court had gone "through each of the requirements of Rule 4-215(a)(1) through (4)." The court granted a postponement until September 8, 2015. It advised appellant that he would be at a "considerable disadvantage" if he did not get an attorney, but if he did not retain a private attorney or ask his assigned public defender to represent him, appellant would have to represent himself. Appellant stated that he understood.

At the postponement hearing on November 17, 2015, appellant advised the court that he had been charged with first-degree murder and he knew the maximum penalty. Appellant asked if his former attorney could assist him as stand-by counsel, and the court stated that he was "fishing in an empty pond." It stated that it would not appoint her as a stand-by lawyer, but he could discuss it with the public defender's office and raise it with the judge who would try the case.

On December 16, 2015, approximately one month before trial was set to commence, the parties appeared again before the judge who presided over the January 23, 2015, hearing. The judge stated that he had reviewed the transcript from the January 23,

2015, hearing, particularly the advisements pursuant to Rule 4-215(a)(3), and he was not comfortable that he had strictly complied with the Rule.[10] The court stated that it wanted to make sure that appellant was properly advised before the case went to trial. The following colloquy ensued:

> THE COURT: Okay. And let the record reflect Mr. Womack is here. And I do have copies of the indictments. Could you put those in front of Mr. Womack? All right, Mr. Womack, I think I did partially go over, I just want to make sure, last time that I spoke to you about your discharge of counsel that I made sure I went over the nature of the elements of the charge and the penalties for the charge that you face. Now I'm putting in front of you, I've got the indictments, but my understanding from what you've just presented to me that you've had copies of these indictments for some period. Twenty-one months; is that correct, sir?
>
> [APPELLANT]: Yep
>
> THE COURT: I'm sorry?
>
> [APPELLANT]: Yes, sir.
>
> THE COURT: Okay. And looking at indictment number ending in 032, first count is first degree murder. Sir, what the State has to – first degree murder is the intentional killing of another person with willfulness, deliberation and premeditation. So in order to convict the defendant of first degree murder the State must prove one; that the defendant caused the death – in this case it was Johnie[c]e Sheppard and that the killing was willful, deliberate and premeditated. Willful means that the defendant actually intended to kill – is that Mr. Sheppard?
>
> [PROSECUTOR]: Ms. Sheppard.
>
> THE COURT: Ms. Sheppard, excuse me. Deliberate means the defendant was conscious of the intent to kill. Premeditated means the defendant thought about the killing and that there was enough time before

---

[10] The court stated that it believed it had not advised appellant of the mandatory minimum penalties for the charges of use of a handgun in the commission of a crime of violence.

-20-

the killing, though it may have only been brief for the defendant to consider the decision whether or not to kill and enough time to weigh the reasons for and against the choice. Premeditated intent to kill must be formed before the killing. It carries with it a maximum penalty of life and there is no mandatory minimum penalty; correct, [prosecutor]?

[PROSECUTOR]: Correct, Your Honor.

THE COURT: All right. Sir, you understand the nature and elements of the charge and the penalties for that charge, sir?

[APPELLANT]: Yes.

THE COURT: All right. Your second count is you are charged with use of a firearm in the commission of a crime of violence. That means that the State has to prove that you committed the crime of violence. In this particular case it would be first degree murder; correct, [prosecutor]?

[PROSECUTOR]: That's correct, Your Honor.

THE COURT: And the defendant used the handgun in the commission of the first degree murder. [The court further defined the meaning of the terms "handgun" and "use."] Carries with it a maximum penalty of 20 years. The first five of which is without the possibility – there's a minimum mandatory sentence of five years. In other words, you would have to serve five years minimum mandatory sentence and that would be without the possibility of parole. Maximum sentence of 20 years. Is that – that's the correct penalty, [prosecutor]?

[PROSECUTOR]: Yes, Your Honor.

THE COURT: All right. Sir, do you understand the nature and elements of that charge and the penalties for that charge?

[APPELLANT]: Yes, I do.

THE COURT: All right. Your third count is wear, carrying or transporting a handgun. That carries – excuse me, let me just give you the – all right. The State in order to prove that particular charge, the State has to prove that you wore, carried or transported a handgun that was within your reach and available for your immediate use. . . . Carries with it a maximum penalty of three years; correct, [prosecutor]?

-21-

[PROSECUTOR]: Correct, Your Honor.

THE COURT: Sir, do you understand the nature of that and elements of that charge and the penalties for that charge?

[APPELLANT]: Yes, sir.

THE COURT: Okay. Indictment ending in 33 is – it is a conspiracy with Deshawn Richardson to murder Johnie[c]e Sheppard. In order to convict you of conspiracy to commit first degree murder, the defendant – the State has to prove beyond a reasonable doubt that the defendant, meaning you, agreed with at least one other person – in this case Deshawn Richardson – to commit the crime of first degree murder, which I've just explained to you. And that the defendant entered into the agreement with the intent that the crime of first degree murder be committed. It carries with it a maximum penalty of life; is that correct, [prosecutor]?

[PROSECUTOR]: Yes, Your Honor.

THE COURT: All right. So you understand the nature of that charge and the penalty for that charge, sir?

[APPELLANT]: Yes, sir.

THE COURT: Okay. The next count is – next charge is 034. You're charged with the intent – attempt to kill – and this particular person at the time, the victim would be, that's [Alisha] Gibson; is that correct?

[PROSECUTOR]: That is correct, Your Honor.

THE COURT: As I told you, sir, in this particular charge you're charged with the crime of attempted first degree murder. Attempt is the substantial step – is a substantial step beyond mere preparation towards the commission of a crime. And this crime – in this case the crime would be first degree murder. In order to convict the defendant of attempted first degree murder, the State must prove that the defendant took a substantial step beyond mere preparation towards the commission of the crime of first degree murder. And I've already described to you what first degree murder is just a minute ago. And two; that the defendant intended to commit the crime of first degree murder. In this case it carries with it a maximum penalty of life; correct, [prosecutor]?

[PROSECUTOR]: Yes, Your Honor.

-22-

THE COURT: Sir, do you understand that particular nature and element of that crime and the penalties for that crime, sir?

[APPELLANT]: Yes, I do.

THE COURT: All right. And the second count, you are charged with the use . . . of a firearm in the commission of a crime of violence. It would be exactly as in the first indictment except this particular crime of violence is not first degree murder. It is attempted first degree murder. It carries with it the same potential sentence of 20 years with a mandatory minimum sentence of five years without the possibility of parole. Do you understand the nature and elements of that crime, sir?

[APPELLANT]: Yes, I do.

THE COURT: And the penalties?

[APPELLANT]: Yes, sir.

THE COURT: Also, in count three, you're also again charged with wear, carry, or transporting a handgun. This is the exact – the nature and elements of this charge are the same exact charge that I just read to you and it carries with it a maximum penalty of three years. Do you understand that – the nature of that charge and the penalties for that charge, sir?

[APPELLANT]: Yes, I do.

THE COURT: Excuse me. I'm looking to indictment 035 and that is a conspiracy charge with Deshawn Richardson. In this case the object of the conspiracy is to murder [Alisha] Gibson. It carries with it – I've just explained to you what the crime of conspiracy was and the crime of murder. You understand that this particular crime also carries with it as with the other conspiracy charge carries with it a maximum penalty of life. Do you understand the nature and elements of this charge and the penalties for this charge, sir?

[APPELLANT]: Yes, I do.

THE COURT: Okay. All right. Now going to indictment ending in 036. The first count of that is attempted first degree murder of Marcus Mu[n]ford. Again, that would be the same exact elements, nature and elements of the attempted first degree murder which I just explained to you

a minute ago. It also carries with it a maximum penalty of life. Do you understand that charge and the penalties for that charge, sir?

[APPELLANT]: Yes, I do.

THE COURT: Next – the second count is that in fact you used a firearm in the commission of a crime of violence. In this particular – again, the crime of violence is the attempted first degree murder of Marcus Mu[n]ford. Do you understand this particular charge and the maximum penalty as well as the mandatory minimum penalty for this charge, sir?

[APPELLANT]: Yes, I do.

THE COURT: All right. And count three again is wear, carry, and transported [sic] a handgun. That would be the same nature and elements of the charge which I've already explained to you. And the penalty again is three years. And it was obviously for the use of a firearm or wear, carrying a firearm in relation to the acts against Mr. Marcus Mu[n]ford. Do you understand the nature and elements of this charge and the penalty for that charge, sir?

[APPELLANT]: Yes, I do.

THE COURT: All right. And finally we have indictment ending in 037 which is conspiracy with Deshawn Richardson to commit the murder – in this particular case to commit the murder of Marcus Mu[n]ford. Again, conspiracy – nature and elements of the conspiracy are exactly the same as the earlier conspiracy which I laid out. The object of this particular conspiracy is to murder Marcus L. Mu[n]ford. It carries with it a maximum penalty of life. So again, sir, do you understand the nature and elements of this charge and the penalties for this charge?

[APPELLANT]: Yes, I do.

THE COURT: Okay. All right. Anything else, Counsel? I just – I think that's what was needed in this case. I just wanted to make sure that I complied with Maryland Rule 4-215.

[PROSECUTOR]: No, Your Honor. Thank you.

Appellant then asked the court to revisit its ruling that his reason for discharging his assigned attorney lacked merit, and he asked the court to appoint a panel attorney to

-24-

represent him at trial. The court noted that it had found that appellant did not have a meritorious reason to discharge counsel, advised appellant that if he discharged counsel appellant would be unrepresented, and appellant "went ahead and discharged," but now wants counsel. The court asked the prosecutor what its obligation was at that point, and the prosecutor stated that appellant was fully advised of his options and made his choice, and the court was not "obligated at this point." The court noted that appellant had the choice one year earlier to keep a competent lawyer or discharge her and either represent himself or hire another lawyer and the appellant "went with that latter choice." Under those circumstances, the court stated that it was not obligated to appoint an attorney to represent appellant.[11] Appellant then proceeded to trial on February 2, 2016, unrepresented by counsel.

## 2.

### Analysis

The State contends that the court "cured any initial errors with respect to the (a)(3) portion of the colloquy at a December 16, 2015, hearing." It points to cases where the Court of Appeals has held that the requirements of Rule 4-215 may be satisfied in a piecemeal fashion. *See Gregg v. State*, 377 Md. 515, 554–55 (2003) (Rule was satisfied cumulatively by advisements given by two circuit court judges over the course of two hearings.); *Broadwater*, 401 Md. at 200–01 (Advisements given in the District Court, and

---

[11] Appellant stated that the court was suggesting that he go to court with an ineffective attorney, which was unjust.

subsequently in the circuit court after a jury trial demand, cumulatively satisfied Rule 4-215(a)).

In the cases cited by the State, however, the piecemeal satisfaction of the Rule occurred prior to the court accepting the defendant's waiver of counsel. The State contends, nevertheless, that piecemeal advisements can satisfy the Rule, even if they occur after the defendant has discharged counsel. We disagree.

The Court of Appeals has repeatedly stated that compliance with the Rule must be established before a valid waiver. In *Knox*, the Court stated:

> Before a court may find that a defendant has waived the right to counsel, the court must be satisfied that the defendant is informed of the risks of self-representation, and of the punishments which may be imposed. The Rule "exists as a 'checklist' that a judge must complete before a defendant's waiver can be considered valid; as such, it mandates strict compliance."

404 Md. at 87 (quoting *Johnson v. State*, 355 Md. 420, 426 (1999)). *Accord Broadwater*, 401 Md. at 180 (The Rule sets forth "the necessary litany of advisements that must be given to all criminal defendants before any finding of express or implied waiver of the right to be represented by counsel may be valid."). The function of the Rule is to make sure that the defendant's decision is "made with eyes open" and the waiver is "knowing and intelligent." *Id.* at 181. "The analytical focus of a Rule 4-215 argument is at the point in the proceeding when the waiver is accepted (and the relevant events leading up to that acceptance)," not what subsequently happens. *Brye*, 410 Md. 643. Because the focus of our inquiry is at the point when the waiver is accepted, we cannot conclude that

the court's subsequent advisements, which were given after appellant discharged counsel, "cured" the initial errors.[12]

We are not suggesting that, if a trial court fails to strictly comply with Rule 4-215, the error can never be cured. As Judge Moylan has stated: "For a judge to traverse Rule 4–215 is to walk through a minefield. A miracle might bring one across unscathed. For mere mortals, the course will seldom be survived." *Garner v. State*, 183 Md. App. 122, 128 (2008), *aff'd*, 414 Md. 372 (2010). It would be illogical to hold that a circuit court that fails to strictly comply with the Rule 4-215 minefield prior to a defendant's discharge of counsel can never remedy that failure, but instead must proceed with a trial that is guaranteed to be reversed on appeal. Rather, we construe Rule 4-215 to permit a court to "cure" an initial failure to comply with Rule 4-215 with subsequent advice to the defendant after the defendant has discharged counsel, but only if the court gives the defendant a chance to reconsider the discharge of counsel after the full advice is given. That, however, did not occur here.

---

[12] Moreover, as appellant notes, the subsequent advisements did not advise that, with respect to a second conviction for use of a handgun in the commission of a crime of violence, a "subsequent violation," "the sentence shall be consecutive to and not concurrent with any other sentence imposed for the crime of violence or felony." *See* CR § 4-204(c).

At the December 16, 2015, hearing, when the court advised appellant, for the first time, that there was a mandatory minimum sentence of five years based on a conviction for use of a handgun in the commission of a crime of violence, appellant had already discharged his counsel. On that date, the court did not give appellant a choice to reconsider his decision, but instead, the court stated that appellant would have to "live with" his choice to discharge counsel.[13] Under these circumstances, the court did not "cumulatively" comply with the Rule prior to accepting appellant's waiver of counsel, and it did not "cure" the initial failure to strictly comply with Rule 4-215(a)(3). Accordingly, reversal of appellant's convictions is required.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED FOR A NEW TRIAL. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

---

[13] Although the record is clear that, had he been given the choice, appellant would not have reconsidered his decision to discharge his assigned attorney, as indicated, the Court of Appeals has held that a harmless error analysis does not apply to a Rule 4-215(a)(3) violation.